(No. 11024.—Judgment affirmed.)

HENRY H. WALKER, Defendant in Error, *vs.* THE CHICAGO, MADISON AND NORTHERN RAILROAD COMPANY *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1917—Rehearing denied April 10, 1917.*

1. SURETIES—*surety may purchase note the same as a stranger.* One who, though a co-maker of a promissory note secured by mortgage, is a mere surety may purchase the note and mortgage the same as a stranger, provided he acts in good faith and uses his own funds, and the fact that he purchases the note after maturity for a discount and takes an assignment of the mortgage securing the same does not preclude him from foreclosing the mortgage for the full amount of the unpaid mortgage debt; and this rule is not limited to notes of partnerships.  (*Kipp* v. *McChesney,* 66 Ill. 460, explained and followed.)

2. SAME—*co-maker of note may be shown to be a surety.* A co-maker of a promissory note may be shown by the evidence to be only a surety, and the presumption is that the payee knew of such suretyship.

3. SAME—*purchase of note and mortgage by surety after maturity does not, ipso facto, extinguish them.* The purchase, by a surety, of a note and mortgage after the maturity of the note and for a discount does not, *ipso facto,* and regardless of the intention of the seller and purchaser as to whether the transaction was a payment or a sale, operate to extinguish the mortgage.

4. SAME—*purchaser of mortgage note pending foreclosure proceedings may be substituted as party complainant.* The surety on a mortgage note who purchases the note in good faith after foreclosure proceedings have been begun may be substituted as a party complainant at any time during the pendency of the suit, unless for some reason the Statute of Limitations has run as against him.

5. LIMITATIONS—*when the five year Statute of Limitations does not apply.* Where the surety on a mortgage note, signed by him as co-maker, purchases the note at a discount after foreclosure proceedings have been begun, the right acquired by him is not merely a right of subrogation, giving him a new cause of action arising at the time he purchases the note and subject to the bar of the five year Statute of Limitations, but is the right to be substituted as a party complainant in the foreclosure proceeding and collect the entire amount due.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, and JOHN G. DRENNAN, for plaintiff in error the Chicago, Madison and Northern Railroad Company.

WILLIAM J. HERRICK, HAMLIN & TOPLIFF, and LOUIS M. GREELEY, for other plaintiffs in error.

WILSON, MOORE & MCILVAINE, (NATHAN G. MOORE, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill and supplemental bill filed in the circuit court of Cook county, under which a decree of foreclosure was entered. On appeal to the Appellate Court that decree was affirmed. The case has been brought here by petition for *certiorari*.

On February 19, 1870, Samuel J. Walker, now deceased, and Henry H. Walker, the defendant in error, executed and delivered to Albert Price their promissory note for $40,000, payable on or before three years after date, and to secure said note executed a trust deed conveying, with other lands, the property involved in these proceedings. It is conceded that Samuel J. Walker was the principal as to the note and Henry H. Walker the surety, only, thereon. In 1871 $18,000 was paid on the note and part of the premises was released from the lien of the trust deed. In 1874 Albert Price died testate and Andrew B. Price qualified as his executor. In 1878, to recover the $22,000 of the principal still due and unpaid, said executor filed the original bill in this cause to foreclose the trust deed. The property covered by said trust deed, an undivided one-fourteenth interest in about 520 acres, had been sold by Albert Price to Samuel J. Walker for $40,000, such interest being conveyed

by deed, delivered simultaneously with the said trust deed, to defendant in error, who took the title at the request of and for the sole benefit of Samuel J. Walker, the actual purchaser. Later Henry H. Walker quit-claimed his interest to Samuel J. Walker. Samuel J. Walker and defendant in error were made defendants in the original foreclosure suit. In 1878 both Samuel J. Walker and his brother, defendant in error herein, were discharged from all indebtedness by a voluntary proceeding in bankruptcy, and the balance remaining due and unpaid on said note was scheduled by each in the bankruptcy proceedings as a liability. In 1885 the death of Samuel J. Walker was suggested in the foreclosure proceedings and the suit revived against his widow and heirs. In 1887 Henry H. Walker acquired the note and trust deed from the executor and heirs of Andrew Price, paying therefor in money and property $27,050, and took an assignment of the same in the name of Granville W. Browning, who was authorized by the assignment to carry on the pending foreclosure suit. The assignment to Browning was merely for convenience, he at the time being the attorney of Henry H. Walker, said note being indorsed in blank without recourse when transferred to Browning. In 1903 Henry H. Walker, under leave of court, filed a supplemental bill in said foreclosure proceedings, setting up his ownership of the note and trust deed, and said Walker's name was substituted as complainant in place of Andrew B. Price, executor, etc. Browning was made a defendant in the supplemental bill and thereafter filed a disclaimer, stating that he had no interest in the note and trust deed. The case was referred to a master, who found, among other things, that by the terms of the note there was due January 10, 1913, a balance of $42,747.54; that Henry H. Walker purchased the note, and as he was surety on the same his sole right was to be indemnified for the amount he paid for the note; that he had already been paid, some years before the filing of the supplemental bill, more than this amount

and was therefore not entitled to a foreclosure of the trust deed, and that the suit should be dismissed. Exceptions to the master's report were sustained in the circuit court and a decree of foreclosure entered for the full amount due on the note, in accordance with the prayer of the supplemental bill.

Counsel for plaintiffs in error urge numerous reasons why the judgment of the Appellate Court and the decree below are erroneous, the principal one being that defendant in error purchased the note in question after maturity, and having already received more than he paid for the note he was not entitled to a foreclosure of the trust deed; that in purchasing it under these circumstances the note was extinguished both in law and equity;—or (as counsel for defendant in error put the same question) is a note which evidences a valid debt for purchase money, extinguished both in law and equity, and the security for its payment forever gone, when purchased for value by one of the co-makers, who was a surety, only, and not the real debtor. Counsel for defendant in error argue that defendant in error acquired this note and mortgage by purchase and not otherwise; that he had a right to buy it as another man's debt and not his own, and that there is no rule of law which denies him the right, as surety, to purchase this obligation and have the same rights as any purchaser would have who was in no way connected with the original transaction.

Plaintiffs in error, and those through whom they obtained title, acquired the title they now hold in this property from numerous sources and through various muniments of title, all subsequent to the execution of the trust deed under which this foreclosure was taken, and such title was obtained subject to the lien of said trust deed and the note thereby secured. It is clear that neither plaintiffs in error nor those from whom they obtained their title have made any payments on said mortgage debt. It necessarily follows that if the contention of counsel is here upheld, they will hold their title free and clear from the mortgage lien sub-

ject to which they obtained such title. It is not contended
that the full amount of the original debt has been paid but
merely that the balance due on the original indebtedness has
been extinguished, because defendant in error, a co-maker
of the original note, purchased from the original owner the
note and trust deed at a discount. The argument is that
defendant in error's only right, even though he was simply
a surety and not a co-maker, was to be reimbursed by Sam-
uel J. Walker or his estate for the amount defendant in
error actually paid in purchasing said note and trust deed,
with the equitable right, as surety, to be subrogated to the
trust deed for the purpose of securing and enforcing such
right of reimbursement, and that when reimbursed for the
full amount paid in purchasing the note and trust deed all
his right to proceed further under either of those documents
was ended.

The argument of counsel for defendant in error is not
without merit that their client purchased this indebtedness
and its security as a stranger, because he was discharged in
bankruptcy from this very obligation. (*Comstock* v. *Gage,*
91 Ill. 328.) Opposing counsel insist that the discharge in
bankruptcy did not end the debt, but left a sufficient obliga-
tion resting upon defendant in error to sustain a new prom-
ise to pay the debt; that the benefit of the discharge in
bankruptcy might be waived by such a promise. We do not
think there is any basis for claiming that there was a new
promise made by defendant in error, or that the mere fact
that he purchased the note which he originally signed as
surety would waive the discharge. Be that as it may, the
defendant in error being not the real debtor but only a
surety, under the authorities in this State had the right to
purchase the promissory note and mortgage securing the
same as a stranger, if he did so in good faith with his own
funds. A co-maker may be shown by the evidence to be
only a surety. (*Hull* v. *Peer, 27* Ill. 312; *Rogers* v. *School
Trustees, 46* id. 428.) The presumption is that the payee

knew of the suretyship. (*Ward* v. *Stout,* 32 Ill. 399.)   It
is not questioned on this record that it was clearly shown
that defendant in error signed the original note as surety
and not as co-maker.   Neither can there be any controversy,
on the facts before us, that when defendant in error pur-
chased the note and mortgage, in 1887, the transaction be-
tween him and the then owner was considered a purchase
and not a payment of the note or debt.   This fact is prac-
tically conceded by counsel for plaintiffs in error, it being
contended only by them that the payment of the note by
one of the joint debtors, even though he was only a surety
and the payment was made by him in the form of a pur-
chase and accompanied by an assignment of the debt, is
still an extinguishment of the note and a discharge of the
debt itself.

In *Kipp* v. *McChesney,* 66 Ill. 460, a note made by a co-
partnership operating under a corporate name was payable
to one Dent.   Dent sold and assigned the note to one Davi-
son, who was one of the partners and therefore obligated to
pay the note.   Davison afterward sold it to one McChesney,
who brought suit to collect.   It was there contended that
the purchase by Davison and its assignment to him by the
payee were a payment of the note, or if not a payment, that
as Davison, when he acquired title to the note, could not
have maintained a suit at law against the makers, he being
one of them, neither could he transfer the right to sue to
his assignee.   The court held against both of these conten-
tions and said (p. 462) : "We think the case turns entirely
upon whether there was a payment of the note by Davison
or a purchase of it by him.   If he paid the note as one of
the makers of it, it was an extinguishment of the note and
he could not afterwards put it in circulation.   The testi-
mony of both Dent and Davison is unequivocal that it was
a purchase of the note by the latter and not a payment. * * *
We perceive no satisfactory reason why such a transaction
should be adjudged a payment if it were in reality other-

wise, or why, by operation of law, it should work an extinguishment of the note if it was not so intended." Again the court said (p. 463) : "While the note remained in the hands of Davison, as assignee, he could not have enforced its payment by suit at law, for the reason that he could not have sued himself as maker. * * * But this is a difficulty attending the remedy, only,—not the right; and when the note is indorsed to one against whom there is no such objection the difficulty ceases to exist and such third person may maintain an action upon the note."

Counsel for plaintiffs in error insist that the force of the above decision is destroyed as applying to the case here because that case involved a partnership and the reasoning was based on that fact. It is true that the decision stated, among other things, "one co-partner may deal as an individual with his firm. He may invest his private means in the purchase of partnership securities, * * * and we do not perceive why he should not be allowed to hold them as valid obligations without their being accounted as paid or extinguished by his act of purchase of them," but we do not think it was intended to hold that the doctrine therein laid down only applied to a co-maker of the note when the co-makers were partners. Some of the authorities cited in that opinion were cases in which the co-makers were not partners, and in none of the cases cited was the rule laid down as being limited to partnership cases, only. The following cases are those of co-makers who were not partners and tend strongly to uphold the general doctrine laid down in *Kipp* v. *McChesney, supra: Heywood* v. *Wingate,* 14 N. H. 73; *Little* v. *Rogers,* 1 Metc. 108; *American Bank* v. *Doolittle,* 14 Pick. 123; *Woods* v. *Ridley,* 11 Humph. 194; *Walker* v. *Sims,* 64 Pac. Rep. (Kan.) 81; *Rambo* v. *Metz,* 5 Strobh. 108; *Bell* v. *Pitman,* 136 S. W. Rep. (Ky.) 1026; *Beecham* v. *Smith,* 96 Eng. C. L. 442.) Neither do we see any reason, on principle, why a different rule should be laid down concerning partners as co-makers than as to

those who are not partners. This court has held in *Abbott* v. *Anderson,* 265 Ill. 285, that it will not recognize the firm as a legal entity distinct from the partners, and this is the general rule in most other jurisdictions. The reasoning in *Kipp* v. *McChesney, supra,* as applying generally to co-makers, is sustained by other decisions in this State.

In *Flagg* v. *Geltmacher,* 98 Ill. 293, a note secured by trust deed was purchased by the sole maker thereof, who having theretofore sold the property subject to the trust deed, which the purchaser had assumed, caused the land to be sold under the power of sale therein contained and himself became the purchaser, taking the conveyance from the trustee. A bill was filed attacking the title on the ground that the purchase amounted to extinguishment, and therefore the payment, of the debt. The court said (p. 298): "The only other question pressed on our attention is this: Was the trust deed when Toms [the trustee] sold and appellee purchased, a subsisting lien on the premises, or was the debt to secure which it was given, paid and the lien discharged and the power of the trustee to sell extinguished? If the debt was, in its full sense, paid, then the power of the trustee was at an end. But it is contended that the debt was not so paid as to extinguish the lien for the money. Holmes [the payee] was paid, it is true; but did that release the land? * * * Appellee was under no legal or moral obligations to protect the rights of appellant. Their relations were such that he could deal with the property as any other stranger. * * * Appellee became virtually a surety for its payment to the creditor, and as such he had the right to pay, if he chose, without canceling the debt as to them. He could therefore become the purchaser at the trustee's sale." The court held that the purchaser took good title at the sale.

Counsel for plaintiffs in error seem to argue that in the case last cited, even if the debt was not wiped out, the note was, and that the note was the only obligation sued upon,

and that when the mortgaged premises were again conveyed the mortgage could be again sued upon. Assuming for the purpose of this argument, though not conceding, that the note was extinguished by this purchase, it does not follow that the debt was also extinguished. In *Rogers* v. *School Trustees, supra,* a mortgage secured a note signed by three sureties. When it matured a new note was given in lieu thereof with only two sureties. The court held that the mortgage still secured the purchase price notwithstanding the change in the note. In *Hamilton* v. *Quimby,* 46 Ill. 90, a note secured by mortgage had been merged in a judgment, and the court said the land was conveyed as security for the payment of the debt, and the fact that the note was reduced to a judgment could not operate as a satisfaction. In *Darst* v. *Bates,* 51 Ill. 439, a mortgage was given to secure certain notes indorsed by one Sweat. The notes were taken up and others substituted, with different indorsers. The court said (p. 445) : "Although Sweat and Bates may have been released as indorsers, still Hall and Hurlbut remained liable for the same debt, as it had not been paid or they in any manner discharged, and equity only looks to the substance and not to mere form." (See, also, *Flower* v. *Elwood,* 66 Ill. 438.) In *Allen* v. *Powell,* 108 Ill. 584, a corporation appealed from a decree foreclosing a mortgage given by it, and the decree, on appeal, was affirmed, whereby the surety on the appeal bond became liable. The court held that the surety had the right to purchase the decree and hold the same for his indemnity; that the decree was not discharged, but would be kept alive according to the intention of the parties, for the surety's protection. The court said (p. 590) : "As has been seen, there was no intention to discharge such indebtedness, and the intention of the parties is always the controlling element in such transactions. It is still owing and undischarged, and the assignment carries with it the same right to collect that the executors of the mortgagee had." In *Katz* v. *Moessinger,* 110 Ill. 372, the

court held as to a surety on notes upon which the judgment was founded, that "when he paid the judgment he had the right to keep it alive for his own benefit by an assignment to a third party or regard it as paid and discharged, as might best subserve his own interest." In that case Moessinger elected to treat the judgment as paid and discharged and brought his action on this theory, and the court said it did not regard the formal assignment as of any importance as to whether it was a purchase or discharge of the debt. In *Thomas* v. *Home Building Ass'n,* 243 Ill. 550, the court said (p. 559) : "Neither did the payment of the amount of the indebtedness by the owner of the property and the assignment of the judgment for her benefit operate to extinguish the judgment. The assignment of a judgment will not satisfy or extinguish it where the assignee, although liable for the debt evidenced by it, is not a party to the judgment or occupies the position of surety, only."

Counsel insist that none of these Illinois cases are in point because the respective facts are different from those here involved, and in some of them what is said as bearing on the question here under consideration was unnecessary for the decision of those cases and therefore dictum. We do not so understand most, if not all, of those cases. While it is possible some of them might be distinguished from this case, in the majority the question involved was of such a nature as to make the reasoning in those cases conclusive, unless overruled, on the question here involved. Numerous authorities have been cited in the briefs which tend to uphold the reasoning and conclusion in the cases decided by this court, that there is nothing in the relation of principal and surety that will prevent the surety from buying the claim against the principal at a discount or otherwise taking an assignment of it and holding it for the full amount, the same as a stranger might. Among others, the following authorities support this conclusion: *Wilkerson* v. *Tichenor,* 62 S. W. Rep. (Ky.) 870; *Hickman* v. *McCurdy,*

7 J. J. Marsh. 555; *Gerdine* v. *Menage*, 43 N. W. Rep. (Minn.) 91; Pingrey on Suretyship and Guaranty, sec. 186; Childs on Suretyship and Guaranty, 304; 27 Am. & Eng. Ency. of Law, (2d ed.) 480.

Counsel for plaintiffs in error have cited the following among many other authorities, which they insist uphold their position that where a surety on a note purchases said note after maturity it is *ipso facto* by that action extinguished, no matter what the intention of the purchaser and seller of the note may have been: *Harmer* v. *Steele*, 4 Exch. 1, 13, 14; *Bryant* v. *Smith*, 10 Cush. 169; *Freakley* v. *Fox*, 9 B. & C. 130; *New Bedford Institution for Savings* v. *Hathaway*, 134 Mass. 69; *Exchange Nat. Bank* v. *Chapline*, 109 Ark. 242; *Frevert* v. *Henry*, 14 Nev. 191; *Swem* v. *Newell*, 19 Colo. 397; *Stevens* v. *Hannan*, 86 Mich. 305; *Burrus* v. *Cook*, 215 Mo. 496; *Deavenport* v. *Green River Deposit Bank*, 138 Ky. 352; *Reed* v. *Norris*, 2 M. & Cr. 362. Some of these authorities state, in terms, that the co-maker or surety on the note paid the debt and did not intend to purchase it. Some of the decisions were evidently based on the question of reimbursement and subrogation and the rights of the parties under the law, when those questions, alone, were raised. It must be conceded that some of the cases cited, however, are directly in point and tend strongly to uphold the arguments of counsel for plaintiffs in error on this question, but we think that the reasoning in those cases is not in accord with the reasoning and the conclusions reached in the cases decided by this court heretofore cited and considered. We shall not attempt to discuss in detail the authorities that we have just cited. As we consider the decisions of this court conclusive on the question here under consideration, it would serve no useful purpose to attempt to distinguish or to discuss those cases that cannot be distinguished. In the light of the discussion and the reasoning of this court in *Coggeshall* v. *Ruggles*, 62 Ill. 401, cited and relied on by counsel for the plaintiffs in er-

ror, we do not consider that case to conflict in any way with the reasoning of this court in the cases heretofore considered. On the facts in this record we think defendant in error had the right to purchase the note and mortgage after maturity the same as a stranger, even at a discount, without thereby extinguishing the note and mortgage. While this conclusion may be in conflict with certain decisions in other jurisdictions, we think, on principle as well as by the reasoning of the previous decisions of this court, this is necessarily the correct conclusion. This conclusion renders it unnecessary to consider or discuss the question of title derived by any of the plaintiffs in error through the mortgage of Charles W. Stewart of June 1, 1866, and the deeds thereafter of Samuel J. Walker. Even if they obtained any rights in any of these deeds from Samuel J. Walker that they are relying on, those rights could not defeat the right of defendant in error in the Price note and mortgage purchased under the circumstances herein set forth.

Considerable discussion is found in both briefs as to the equities between the parties. Of course, this question need not be considered in view of the holding of this opinion as to the right of defendant in error to purchase the Price note and mortgage.

Counsel for plaintiffs in error further insist that the cause of action is barred by the Statute of Limitations because defendant in error, having signed the note, could acquire the mortgage only to the extent of indemnifying himself, under the doctrine of subrogation or otherwise; that therefore a new cause of action accrued to him, which was barred in five years after he purchased the note. This naturally would be true if plaintiffs in error's only right were that of reimbursement under the doctrine of subrogation, (*Junker* v. *Rush*, 136 Ill. 179,) but we have heretofore held in this opinion that this is not an action for reimbursement but to foreclose the original trust deed and collect the entire

debt. The cause of action, therefore, was not barred on the ground above mentioned.

Plaintiffs in error further contend that the note by its terms became due in February, 1873, and the right to foreclose the trust deed accrued at that date; that more than thirty years having elapsed before the supplemental bill was filed, in 1903, defendant in error could only enforce his right by filing an original bill in the nature of a supplemental bill, which would be equivalent to the commencement of a new suit, and that therefore any right which he claims was barred long before 1903. We do not deem it necessary to distinguish between original bills and original bills in the nature of supplemental bills. The distinction between them is based, as Story says, "rather upon formal, technical principles than upon any substantial difference." (Story's Eq. Pl.—10th ed.—sec. 345.) But conceding that defendant in error could only have been made a party by an original bill in the nature of a supplemental bill, the form of the bill filed herein might readily place it in that class of bills. This being so, under the authorities no question can be made but that defendant in error, after purchasing the note and mortgage *pendente lite,* should have been substituted as a party complainant. (21 Ency. of Pl. & Pr. 38; Story's Eq. Pl.—10th ed.—sec. 348; 1 Wiltsie on Mortgage Foreclosure,—3d ed.—sec. 119; *Gage* v. *Schmidt,* 104 Ill. 106; *Smith* v. *Brittenham,* 109 id. 540.) This can be done at any time the matter is called to the attention of the court during the pendency of the suit, unless for some reason the Statute of Limitations has run as against the purchaser of the note and mortgage. The report of the master and the decree of the circuit court find, and the Appellate Court's opinion states, that payments were made upon this note from time to time, both before and after it was purchased by defendant in error, the last one in 1907. It needs no citation of authorities to show that the Statute of

Limitations would not bar the prosecution of this suit under such circumstances.

Counsel for plaintiffs in error further insist that defendant in error was estopped by the former foreclosure proceedings under another mortgage (to which he was made a party) from asserting any rights to certain of the lands covered by the Walker trust deed. The foreclosure proceedings in the present case were begun April 9, 1878, to foreclose a mortgage dated February 19, 1870, and recorded in April, 1871. Samuel J. Walker in 1872 deeded the portion of the property under consideration on this special point to Joseph E. Young, who with Samuel J. Walker executed a trust deed thereon to J. Y. Scammon to secure notes for $200,000 given in payment for the property, October 25, 1881. Henry Sampson and others, as owners of some of these notes, filed a bill in the Federal court in Chicago to foreclose said last mentioned trust deed. Defendant in error was made a party to this last proceeding, but the Prices, who then owned the prior mortgage, were not made parties to the foreclosure proceedings brought by Sampson, although the foreclosure proceedings here under consideration were then pending and though the trustee and many of the note holders and the maker of the Sampson mortgage were all parties defendant in the Price foreclosure proceedings.

Defendant in error was served with summons in the Sampson foreclosure proceedings in November, 1881, and thereafter was defaulted. Counsel for defendant in error insist that the default was taken December 14, 1883, four years before the purchase of the note and mortgage from Price, and that the record should so show. Counsel for plaintiffs in error do not deny that the default was taken on that day. They insist, however, that the record does not show what the correct date was. Plaintiffs in error are here urging on this question the doctrine of estoppel, and the burden to prove such estoppel is upon them. It therefore follows that so far as the question of estoppel is

affected by the date of this default they should show what that date was, or it will be presumed on this record that such default was taken prior to defendant in error's purchase of the note and mortgage in question. (10 R. C. L. 845.) The bill in the Sampson foreclosure proceedings did not mention the Prices nor their mortgage, and made no averment that it was subject or subordinate to the Sampson mortgage. It appears also in the record that defendant in error was made a party to the Sampson foreclosure suit for the reason that he had made another mortgage to one Prather, which the foreclosure proceedings in the Sampson case sought to set aside. At the time defendant in error was defaulted he had no interest in the Price mortgage, and no attempt was made to make him a party to the Sampson foreclosure proceedings after he purchased the Price note and mortgage. The fact that the decree of foreclosure was entered October 22, 1890, in the Sampson foreclosure proceedings, after he purchased said Price note and mortgage, would not in any way, under the facts just stated, estop him from claiming title under the Price mortgage to the property covered by the Sampson mortgage.

Counsel for plaintiffs in error further insist that defendant in error is estopped as to claiming eighteen acres of land included in the Price trust deed because he assigned to plaintiff in error Steele a master's certificate of sale of said land under said Sampson foreclosure. The record shows that Samuel J. Walker and Joseph E. Young in 1872 executed a trust deed covering said eighteen acres to secure an indebtedness of $200,000. October 25, 1881, Henry Sampson and others, as owners of the indebtedness, filed a bill to foreclose the trust deed in the Federal court; that defendant in error was made defendant in that suit and served with process and defaulted; that a decree of foreclosure was entered, as heretofore stated, October 22, 1890, ordering that said eighteen acres be sold; that said defendant in error became the purchaser at such sale and after-

277 — 30

ward assigned his certificate of sale to Nelson A. Steele, not disclosing to said Steele his present claim as owner of the Price note and mortgage. It seems to be assumed by plaintiffs in error in arguing this point,—and it must be assumed if there is anything to the point,—that the Price mortgage was not barred by said decree. Of course, this position of counsel for plaintiffs in error is entirely inconsistent with the position they have taken on the point previously discussed. The Price mortgage not being barred by said decree at the time of issuing and assigning the certificate of purchase, defendant in error was the first mortgagee whose mortgage was not in issue in the Sampson foreclosure, and he purchased a part of the property sold under the Sampson foreclosure of a second mortgage, which was a lien only on the equity of redemption. A certificate of purchase passes no title. The holder is nothing but a bidder until the time of redemption expires. (*Bradley* v. *Lightcap,* 202 Ill. 154.) The argument of plaintiffs in error therefore amounts to this: that a first mortgagee cannot become a purchaser of the equity of redemption at a foreclosure sale, although under a later mortgage, without waiving his first mortgage; or, as counsel in effect argue, he cannot assign a certificate of purchase so acquired without barring his claim under the first mortgage. This is not the law. A first mortgagee may buy the equity of redemption direct from the owner. Why may he not therefore buy it at foreclosure or execution sale? He may be a bidder even at his own foreclosure sale. The Price mortgage was dated in 1870, and was, as a matter of fact, a first lien on the premises, and a suit to foreclose that mortgage had been pending three years when the Sampson proceedings were begun in the Federal court. In the Sampson suit, as already stated in this opinion, the owners of the Price mortgage were not made parties defendant and no suggestion was made in that case that would in any way affect the validity of the Price mortgage. Under such condition

of facts it clearly appears that the lien of the Price mortgage was in no way affected by the Sampson foreclosure suit or by the transfer of the certificate of sale at the date defendant in error transferred it to plaintiff in error Steele.

Counsel for plaintiffs in error further argue that the decree erroneously found that all of the 520 acres covered by the trust deed in these foreclosure proceedings (except the small portion embraced in this decree) had been released, the effect being, as argued, to impose an undue burden on the plaintiffs in error's lands. It may well be questioned, as stated by the Appellate Court and argued by counsel for defendant in error, whether the record is not in such shape that this question cannot be raised here. Whether that be true or not, the master found that the lands in question had been properly released, and we think there is in the record evidence tending to support his conclusion in that regard and no evidence that in any way conflicts therewith.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*