## VERNON CENTER STATE BANK v. NICK MANGELSEN AND ANOTHER.[1]

April 1, 1926.

No. 25,158.

**Defenses to promissory note available to surety are not available to accommodation maker.**

1. The Negotiable Instruments Law makes an accommodation maker *primarily* liable to a holder for value. In consequence he cannot avail himself of the defenses, such as extension of time of payment without his consent, which are available only to a surety.

**No estoppel against bank because of answer of its cashier to maker's question.**

2. A bank is not estopped from enforcing a promissory note by reason alone of the fact that its cashier, upon an informal inquiry from the maker, told the latter that the bank had none of his paper, even though the maker may have acted to his detriment upon the assumption of the truth of the information.

**To discharge note, maker's tender must be unconditional.**

3. A note is not discharged by the maker's tender of money which, at the time being, was not his to tender, the property therein being in another. Such a tender cannot be unconditional.

Banks and Banking 7 C. J. p. 530 n. 68.
Bills and Notes 8 C. J. p. 48 n. 85; p. 276 n. 10, 11; p. 278 n. 22; p. 1011 n. 68.
Tender 38 Cyc. p. 152 n. 57.

See notes in 10 L. R. A. (N. S.) 129; 26 L. R. A. (N. S.) 99; 3 R. C. L. p. 1277; 1 R. C. L. Supp. p. 1019; 4 R. C. L. Supp. p. 242.

Action in the district court for Blue Earth county upon a promissory note. The case was tried before Comstock, J., and a jury which returned a verdict in favor of defendant Barnes. Plaintiff appealed

[1]Reported in 208 N. W. 186.

from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed with instructions to enter judgment for plaintiff.

*William Stradtmann*, for appellant.

*H. L. & J. W. Schmitt* and *H. W. Volk*, for respondent Barnes.

STONE, J.

Action by the payee against Mangelsen and Barnes, the makers, on a promissory note. Mangelsen was not served and did not appear, but the case went to trial against Barnes and a verdict in his favor. Plaintiff appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The note was for $800 and executed September 15, 1919. It represents money borrowed for the purchase of a tractor for farm use, Barnes signing for the accommodation of his tenant, Mangelsen. The note included the consent of the makers "that the time of payment hereof may be extended without notice." There were at least three extensions and it may be that, the consent to an extension not being in the plural, it was exhausted by the first of them. Kremke v. Radamaker, 60 Okla. 138, 159 Pac. 475. But that point, and also the argument that none of the extensions were definite or contractually binding upon plaintiff, we do not consider. For other reasons, we have concluded that defendant Barnes has no defense.

1. Being an accommodation maker, his primary liability as a comaker is fixed by sec. 29 N. I. L. (sec. 7072, G. S. 1923). It makes an accommodation party "liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Section 29 alone makes an accommodation party liable to any holder for value, primarily and "on the instrument." So an accommodation maker must be liable as a maker and not as a mere surety, for otherwise he would not be liable "on the instrument" but on an extraneous and implied contract of different tenor—one the benefits of which may not be reserved even to an indorser without "appropriate words" indicating "his intention to be bound in some other capacity."

Sec. 63, N. I. L.—sec. 7106, G. S. 1923. The word surety appended to the signature of a *comaker* has been held of no effect as against a holder for value. Cellers v. Meachem, 49 Ore. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997.

Our conclusion is confirmed by sec. 192, N. I. L. (sec. 7236, G. S. 1923), which provides that "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same." The section concludes with this significant statement, "all other parties are 'secondarily' liable." Under that section Mr. Barnes, "by the terms of the instrument" is a maker and so liable on it absolutely and primarily.

For defendant, reliance is put upon the mandate of sec. 58, N. I. L. (sec. 7101, G. S. 1923): "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." Plaintiff is not a holder in due course, so it is argued that in its hands the note is subject to all defenses which might be interposed if it were non-negotiable. That argument is prevented of application here by sec. 29 which so clearly limits the defenses of an accommodation maker, as against a holder for value, to those which are open to one primarily liable on the instrument, in this case a comaker. Section 58 is general in its application, whereas sec. 29 is particular in its stated effect on accommodation paper. So within its limited and particular field the latter controls.

The next step is to consider what defenses are open to a primary obligor on negotiable paper. Section 119, N. I. L. (sec. 7162, G. S. 1923), provides that "a negotiable instrument is discharged" by any one of the five operations there enumerated. Extension of time of payment without consent of parties secondarily liable is not one of them. Again, one section of the law complements another, and the next section 120 (N. I. L. sec. 7163, G. S. 1923), provides for the discharge of persons *secondarily* liable by any one of six operations. The last is the holder's binding agreement "to extend the time of payment, or to postpone the holder's right to enforce the instrument" without the assent of the party secondarily liable or express

reservation of recourse against him. It would be hard to express more plainly the intent to give extensions to which they have not consented the effect of discharging persons secondarily liable and at the same time to deny such effect as to persons primarily liable. It follows that defendant Barnes, being a comaker and so primarily liable to plaintiff, a holder for value, was not released by the extensions granted his comaker.

It was rule of the law merchant that an accommodation maker stood with respect to the payee in the position of surety for the accommodated one. But the uniform statute is to be construed without resort to the former law except when "necessary to dissolve obscurity or doubt." With that sort of a preface, the Supreme Judicial Court of Massachusetts in Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525, held "that no relation of principal and surety is established or contemplated" by the uniform statute. The opinion proceeds: "It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. * * * The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time of making that the maker was an accommodation maker."

To the same effect are First Nat. Bank of McClusky v. Meyer, 30 N. D. 388, 152 N. W. 657; Vanderford v. F. & M. Nat. Bank, 105 Md. 164, 66 Atl. 47; 10 L. R. A. (N. S.) 129; Cellers v. Meachem, 49 Ore. 186, 89 Pac. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997; Wolstenholme v. Smith, 34 Utah, 300, 97 Pac. 329; Bradley Engineering & Mnfg. Co. v. Heyburn, 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127; Richards v. Market Exchange Bank Co. 81 Oh. St.

348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99. What was formerly the minority rule has been adopted by the Negotiable Instruments Law. 8 C. J. 277. In similar fashion did that statute change our former rule that indorsers before delivery were comakers. It requires them to be treated instead as the parties they appear to be, indorsers only. G. Somers & Co. v. Tintah Co-op. M. Co. 155 Minn. 107, 192 N. W. 492.

Fullerton Lbr. Co. v. Snouffer, 139 Iowa, 176, 117 N. W. 50, seems to stand alone to the contrary. We have given that opinion attentive consideration. Aside from the great weight of authority the other way, we cannot agree in its one and major premise that the Negotiable Instrument Law was not applicable. The opinion states:

"Here the issue is between the parties to the instrument, and the rights of holders in due course are not involved. As we understand it, the entire scope and purpose of the act so far at least, as it affects the question before us, is to fix the rights of holders in due course * * *. This we think is apparent from the act itself."

In that we cannot concur, for much of the Negotiable Instrument Law affects holders other than those in due course, e. g. section 29, defining the liability of an accommodation party, *not* to a holder in due course but to one for value only, and sec. 17 (sec. 7060, G. S. 1923), with its seven rules of construction as applicable between the original parties as when the paper has reached a holder in due course.

It is also claimed on behalf of Mr. Barnes that he was released because of plaintiff's failure to enforce a chattel mortgage it took as security on the tractor purchased by the proceeds of the note. The most the evidence shows is a delay or failure to enforce the chattel security and an election to proceed on the note. Defendant being primarily liable cannot complain of that course.

2. Another defense claimed for Mr. Barnes is an alleged estoppel. He claims that after the maturity of the note he inquired of plaintiff's cashier, upon the occasion of the settling of another debt to

plaintiff, whether the latter had any more paper on which he was obligated. He received a negative answer. He does not assert that he asked the cashier or anyone else to search the bills receivable register or the note pouch for the requested information. It was asked and given under circumstances which could not indicate that it was to be final and binding upon plaintiff or acted upon by defendant. It is immaterial that he may have done so. It would be intolerable to predicate an estoppel upon such informal and negative information, so asked and so received. That would give to such a mistaken negative answer, intended only to be informative, the wholly different and unintended effect of discharging, without consideration, definite and formal obligations which should not be left open to destruction by such uncertain and precarious methods.

3. Concerning the remaining defense of payment, we must make further examination of the evidence. Mr. Mangelsen remained a tenant on the Barnes farm during 1923 as a cropper on shares. The crops of that year, on September 25, had been sold to grain dealers and others who were indebted for the proceeds. There had been no division between owner and cropper. With the assistance of Mr. Cotherman, plaintiff's cashier, they "collected up the tickets, the grain tickets." The proceeds agregated $2,337.25; Barnes' share was $1,441.30 and he was paid that amount. The balance, $895.95, belonged in the first instance to Mr. Mangelsen. Under his contract with that gentleman, Mr. Barnes might have successfully asserted a lien against that money or some part of it. But it is plain that he could not by his own unaided demand apply Mr. Mangelsen's money in any manner not consented to by the latter. He testified as follows:

"Q. Then what was said and done among the three of you after that? A. I said to Mr. Cotherman here is $895.95 and if Nick Mangelsen has not paid the note of $800, here is the money to pay it. Q. What if anything was said by Cotherman? A. Mr. Cotherman, he said nothing. Q. What if anything was said by Mangelsen? A. He said nothing. Q. Was Mangelsen there where he could hear it? A. Yes, Sir." (The next day Cotherman made an

unequivocal demand on him for payment of the note—this Barnes admits).

So the evidence of payment reduces itself to a tender of money by Mr. Barnes which at the time was not his to tender. At most, his only interest in it consisted of a lien. Certainly the evidence falls short of showing consent by Mr. Mangelsen to the application of the balance in question to the payment of plaintiff's note. In the absence of such consent, the tender was not unconditional and did not discharge the note. The burden of proof of payment was upon defendant and he failed to the extent thus indicated.

Reversed with directions to enter judgment for plaintiff.

The Chief Justice took no part.