**UNITED STATES of America, Plaintiff,**

**v.**

**BIRNGOLD REALTY COMPANY, Mae Ed Company, Arnold Schildhaus and Sherry Schildhaus, Defendants.**

United States District Court
S. D. New York.
Dec. 7, 1962.

Robert M. Morgenthau, U. S. Atty., John Paul Reiner, New York City, of counsel, for plaintiff.

Arnold Schildhaus, New York City, pro se.

EDELSTEIN, District Judge.

Before the court are cross motions for summary judgment, Rule 56(c), Federal Rules of Civil Procedure.[1] The Government, as assignee of the Federal Housing Administrator, has brought suit on three negotiable promissory notes insured under the provisions of the National Housing Act, as amended 12 U.S.C.

---

1. On argument the defendant orally cross-moved for summary judgment. Although Rule 7(b) (1), Fed.R.Civ.P. requires that motions "shall be in writing," there is authority permitting resort to an oral motion when the opposing party does not object. 2 Moore, Federal Practice 1544 (2d ed. 1961), Tudor v. Leslie, 35 F.Supp. 969 (D.Mass.1940). Although a written motion would obviously have been the better practice, the expedient of an oral motion was permitted herein since the court's conclusion, based on its independent examination of the file, is in accord with the concessions of the parties.

§ 1702 et seq. (Supp. III, 1962). Jurisdiction is based on 28 U.S.C. § 1345 (1958).

On February 2, 1962, the parties filed a stipulation as to certain material facts concerning which there was no genuine issue. Subsequently, on oral argument, the defendant conceded that there was no genuine issue as to any material fact. An analysis of the file reveals that there is indeed no genuine issue of material fact. See Empire Electronics Co. Inc., v. United States, (2d Cir., 1962, 311 F.2d 175). Accordingly, this suit is ripe for adjudication by summary judgment. The decision turns on the resolution of a legal issue that opens the way for the determination of all the parties' subsidiary contentions which are discussed, infra. That issue—whether the defendant Schildhaus, is a primary or secondary obligor on the respective notes—necessitates the application of the law of negotiable instruments in order to determine where, within the nomenclature of that case-hardened body of law, the relationship of the parties abides. Once having resolved the problem of classification of the parties within the law of negotiable instruments, their respective rights, duties, and liabilities flow freely therefrom. The facts are as follows:

As to the causes of action relating to the first two notes, the facts are essentially similar, except for date and amounts due.

On October 31, 1951, the defendant Arnold Schildhaus executed and delivered a negotiable promissory note payable to the order of the First National City Bank of New York, (hereinafter referred to as the Bank), in the amount of $3,227.89. Schildhaus signed the note twice, once as President of Birngold Realty Corporation, the corporation whose name appears on the note as borrower, and again individually, as co-maker of the note. On December 13, 1951, the defendants Mae Ed Corporation and Arnold Schildhaus executed a second negotiable promissory note payable to the order of the Bank in the amount of $5,977.57. Schildhaus again signed the note both as President of Mae Ed Corporation and then individually as co-maker.

Prior to the delivery of the notes Arnold Schildhaus executed and signed Federal Housing Administration Title I Credit Applications. The applications were executed and signed by Schildhaus as President of both corporations, Birngold Realty Corporation and Mae Ed Corporation. Both corporations passed resolutions, properly sealed and signed by their respective Secretary, Sherry Schildhaus, authorizing their President, Arnold Schildhaus, to borrow, "in his individual capacity," the face amount of the notes for the benefit of the corporation.[2] The resolutions were prepared by Arnold Schildhaus and parts of each of them were executed in his own handwriting. Thereafter, defaults occurred in the payment of each of the notes and the plaintiff reimbursed the payee and holder, the Bank, in the amount of $120.51 on the first note and $1,480.21 on the second note, the respective balances due. The notes were thereupon duly endorsed and assigned to the plaintiff by the Bank and plaintiff is now their owner and holder. Schildhaus was duly notified by the Bank of the default in the payment of each of the notes and admits "having heard" of the defaults. After default, but before assignment to the plaintiff, the time within which to make the installment payments was extended, and in fact, two additional payments were made on each note. By the terms of the notes notice of dishonor and default were expressly waived, and, as the Bank was the

---

2. The pertinent parts of the corporate resolutions of Birngold Realty Corporation and Mae Ed Corporation read as follows: "WHEREAS, Arnold Schildhaus (signature) proposes to borrow, in his individual capacity, from the Personal Credit Department of the NATIONAL CITY BANK OF NEW YORK, a principal amount of ————Dollars, but for the benefit of this corporation and the proceeds of such loan to be payable to the Corporation, NOW, THEREFORE * * *." Exhibits 4 and 9.

holder of the notes, presentment to the maker was not required. N.Y.Negotiable Instruments Law, McKinney's Consol.Laws, c. 38, § 130; Haskell v. Lason, 31 N.Y.S.2d 729 (1941). Upon default and prior to their being negotiated to the plaintiff, the notes were called at the option of the Bank and the balances became due.

As to the third note, on or about December 27, 1952, the defendant Mae Ed Corporation executed and delivered a negotiable promissory note, payable to the order of N. Rogozin Company, in the amount of $2,992.71. The defendant Schildhaus executed this third note as President of Mae Ed Corporation and at the same time guaranteed the payment of the note. The guaranty, a printed provision on the reverse side of the note, provided that "time of payment of said note, or of any of the indebtedness evidenced or represented thereby, may be extended, without notice to or further assent from the undersigned (or any of us), who will be and remain bound upon their guaranty notwithstanding any such extension." Moreover, notice of dishonor and default were expressly waived in the guaranty. Thereafter, but before maturity, the note was duly endorsed and delivered for value to the Bank by the Rogozin Company. A default occurred in the payment of the installments whereupon the note, at the option of the Bank, became due. The holder was reimbursed by plaintiff for the balance due pursuant to its insurance obligation under the National Housing Act, as amended 12 U.S.C. § 1703 (Supp. III, 1962). The Bank was the holder in due course of said note and presentment to the maker was not required. N.Y.Negotiable Instruments Law, § 130.[3] The defendant Schildhaus was notified of the default by the Bank and again admits "having heard" of the default on this note. After the default, but before negotiation of this third note to the United States, the time within which the installment payments were to be made was extended and two additional payments were made. There is $1,253.27 due on the third note.

The signature of the defendant Sherry Schildhaus also appears on the first two notes as co-maker, but she was not served with process. This action is, therefore, against the corporations and against Arnold Schildhaus, individually, as accommodation co-maker for said corporations. There is no question as to the liability of the corporations.

Schildhaus contends that his status on the first two notes is that of an "accommodation party," and that therefore he is a surety for his two corporations and only secondarily liable for their obligations. From this premise the defendant proceeds to the next contention that the extensions of time granted without his consent to the makers by the Bank varied the terms of the original notes and thereby discharged his secondary obligation as surety. He also argues that the fact that the notes were assigned to plaintiff after they were overdue deprives the Government of status as a holder in due course and that further, defendant, as an accommodation party, is not liable to a mere holder for value who takes the note after maturity.

The Government concedes that the assignment of the notes after their maturity prevents it from qualifying for the position of a holder in due course. N.Y.Negotiable Instruments Law, § 91.[4] It contends, however, that its inability to acquire holder in due course status does

---

3. N.Y. Negotiable Instruments Law, § 130:
    *"Effect of want of demand on principal debtor.*
    "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; * * *"

4. N.Y.Negotiable Instruments Law, § 91:
    *"What constitutes a holder in due course.*

"A holder in due course is a holder who has taken the instrument under the following conditions:
    "1. * * *
    "2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact."

not prevent it from recovering the balances due. The Government claims that by virtue of acquiring its title to the instruments from a holder in due course, without being a party to any fraud or illegality affecting the instrument, it has succeeded to all the rights of the prior holder as against a co-maker. And it rejects defendant's characterization of himself as an accommodation party who is only secondarily liable, and contends that the defendant Schildhaus is an accommodation co-maker whose primary liability is not discharged by a variation in the terms of the original agreement.

■ The resolution of the issues of law raised by these contentions depends upon the application of the Negotiable Instruments Law of New York, and the decisional law thereunder. United States v. Hansett, 120 F.2d 121 (2d Cir. 1941); United States v. Tholen, 186 F. Supp. 346 (N.D.Iowa 1960); United States v. Brownlee, 168 F.Supp. 42 (E.D. N.Y.1958). If defendant's basic premise —that he is an accommodation party or accommodation endorser and consequently only secondarily liable—were well founded, the contentions bottomed thereon would follow with facility. More specifically, acceptance of defendant's claim that he was an accommodation endorser would prevent the imposition of any liability on him, since the extensions of the times for payment would have discharged his obligations on the notes. N.Y.Negotiable Instruments Law, § 201(6).[5]

■ But the defendant's basic premise is untenable and this defect in the foundation of defendant's legal theory renders the contentions bottomed thereon unsupportable. It is clear from the exhibits submitted in support of plaintiff's motion that Schildhaus was not an endorser on the first two notes but a co-maker with his corporations. The

corporate resolutions in each case authorized Schildhaus to "borrow in his individual capacity" the amounts of the notes for the benefit of the corporations. Exhibits 22 and 24, entitled "Credit Statement of Co-maker" were executed and signed by Schildhaus. They refute his claim that the legal effect of these writings was to provide him with endorser status. Moreover, Schildhaus signed the face of both notes on the line designated for the co-maker of each. The New York decisions have long settled the proposition that an accommodation co-maker is primarily liable on the instrument and is not liable merely as a surety. National Citizen's Bank v. Toplitz, 81 App.Div. 593, 81 N.Y.S. 422, aff'd, 178 N.Y. 464, 71 N.E. 1 (1903); Stricks v. Siegal, 138 Misc. 266, 245 N. Y.S. 372 (1930); Haskell v. Lason, supra; Meadowbrook National Bank of Nassau Co. v. Dunning, Sup., 208 N.Y.S. 2d 321 (1960); cf. In re Craven's Will, 171 Misc. 825, 13 N.Y.S.2d 987 (1939). The accommodation maker, being primarily liable, is not discharged by an agreement binding the holder to extend the time of payment or by an agreement binding the holder to postpone his right to enforce the instrument. National Citizen's Bank v. Toplitz, supra; Stricks v. Siegal, supra; Haskell v. Lason, supra; Meadowbrook National Bank of Nassau Co. v. Dunning, supra. The rationale of Toplitz is that the accommodation maker is, in reality, the principal debtor since by signing as maker he holds forth his credit for the express purpose of inducing the lender to extend the loan. A contrary rationale would permit a primary obligor to elude his obligation by a self-styled re-characterization of his role. See Vernon Center State Bank v. Mangelsen, 166 Minn. 472, 208 N.W. 186 (1926), 48 A.L.R. 710 (1927). It is evident that in the instant case

5. N.Y.Negotiable Instruments Law, § 201. "*When persons secondarily liable are discharged*

\* \* \* \* \*

"6. By any agreement binding upon the holder to extend the time of payment or

to postpone the holder's right to enforce the instrument, unless the right of recourse against such party is expressly reserved."

Schildhaus' obligation on the first two notes was that of a principal debtor. His execution of the co-maker's statement, the corporate resolutions authorizing him to borrow the funds on his own personal liability and his signature as "co-maker" of the face of the notes all point to the conclusion that Schildhaus undertook a primary obligation as co-maker for the benefit of his corporations. The defenses available to those secondarily liable, such as the defense of extension of time, are not available to Schildhaus. N.Y.Negotiable Instruments Law, § 201(6). Furthermore, defendant does not have any defense under § 200 of the Negotiable Instruments Law, which enumerates the grounds for discharging parties primarily liable. He does not claim cancellation or payment which are defenses under that section.[6]

Section 206 of the N.Y.Negotiable Instruments Law,[7] as applied in Haskell v. Lason, supra, is equally unavailing to the defendant. In Haskell, the court held that the defense of extension of time for payment was not available to an accommodation co-maker but only to a surety. Notations were written on the face of the note in the Haskell case extending the time of payment from June 4, 1938, to December 4, 1938, and thereafter to June 4, 1939. Hence, these written extensions of time constituted material alterations within the meaning of § 206 of the N.Y. Negotiable Instruments Law. The holder's action for summary judgment was denied in order that the circumstances of the extensions could be re-examined and so that there could be a determination, on remand, of whether the maker was discharged as a result of these alterations. Even if Haskell v. Lason can be interpreted as holding that a written extension of time on the face of the instrument constitutes a material alteration so as to discharge persons not consenting thereto, the decision is inapplicable to the notes herein on which no such written extensions or alterations appear. See James Employees Credit Union v. Hawley, 2 Wis.2d 490, 87 N.W.2d 299 (1958).

Moreover, although the plaintiff was not a holder in due course of the first two notes, its status is that of a holder for value as a result of having obtained its title from a holder in due course without having been a party to any fraud or illegality affecting the instrument. N.Y. Negotiable Instruments Law, § 52;[8] United States v. Hansett, supra; United States v. Brownlee, supra; United States v. Costa, 105 F.Supp. 599 (W.D.Pa. 1952); United States v. Warshaw, 61 F. Supp. 678 (E.D.N.Y.1945); United States v. O'Hara, 46 F.Supp. 780 (E.D. Mich.1942); United States v. Dobrowol-

---

6. N.Y.Negotiable Instruments Law, § 200.
   *"Instrument; how discharged*
   "A negotiable instrument is discharged:
   "1. By payment in due course by or on behalf of the principal debtor;
   "2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;
   "3. By the intentional cancellation thereof by the holder;
   "4. By any other act which will discharge a simple contract for the payment of money;
   "5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

7. N.Y.Negotiable Instruments Law, § 206.
   *"What constitutes a material alteration*
   "Any alteration which changes:
   "1. The date;
   "2. The sum payable, either for principal or interest;
   "3. The time or place of payment;
   "4. The number or the relations of the parties;
   "5. The medium or currency in which payment is to be made;
   "Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

8. N.Y.Negotiable Instruments Law, § 52.
   *"What constitutes holder for value*
   "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

ski, 16 F.R.D. 134 (D.Md.1954). Section 55 of the New York Negotiable Instruments Law provides that an accommodation maker is liable to a holder for value, notwithstanding that at the time of taking the instrument, the holder for value knew him to be an accommodation party.[9] It is evident that the defendant is liable to the plaintiff as a holder for value on the first two notes.

As to the third note, the defendant Schildhaus was the guarantor of the obligation of the Mae Ed Corporation. Defendant has argued that he is not liable on the third note because notice of dishonor was not given and presentment for payment was not made. In addition, he reiterates the claim that he was a surety on the note and was discharged by the extensions of the time for payment given without his consent. Exhibits 17, 18 and 20, submitted on the motion, demonstrate that the defendant was in fact given proper notice of the default on each of the three notes. Notices of the default were sent to the addresses indicated by defendant in his application papers. Defendant, moreover, admits that he "heard" of the default. Even assuming *arguendo* that the notices were not given, this lapse would not be fatal since the defendant's obligation on the contract of guaranty was direct and unconditional. Notice of dishonor and presentment were thus not necessary. Swerdin v. Coaltown Fuel Corp., Mun.Ct.N.Y., 111 N.Y.S.2d 672 (1952); Stagg Tool and Die Corp. v. Weismann, 12 App.Div.2d 99, 208 N.Y.S. 2d 585 (1960). Furthermore, by the terms of the first and second notes, and by the guaranty on the reverse side of the third note, notice of dishonor and default were explicitly waived. Finally, by the express wording of the guaranty the defendant Schildhaus waived any defense that he might have had resulting from the extension of time. The guaranty provides:

> "(the undersigned) consents that the time of payment of said note or of any of the indebtedness evidenced or represented thereby, may be extended, without notice to or further assent from the undersigned (or any of us), who will and remain bound upon this guaranty notwithstanding any such extension(s)."

Although defendant, as a guarantor, could have been discharged on his obligation by reason of the extension of time, Metropolitan Capital Corporation v. Janus, 25 Misc.2d 37, 196 N.Y.S.2d 805 (1960), the waiver of the right to take advantage of the extensions is dispositive of this contention.

The plaintiff's motion for summary judgment is granted as to all three notes.

---

9. N.Y.Negotiable Instruments Law, § 55.
   *"Liability of accommodation party*
   "An accommodating party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."