(No. 39623.—

WILLIAM E. KRATOVIL, Appellee, *vs.* WALTER A. THIEDA
*et al.,* Appellants.

*Opinion filed Nov. 14, 1966.—Rehearing denied Jan. 17, 1967.*

KLUCZYNSKI, J., took no part.

FRANK J. TOMAN, of Berwyn, for appellants.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

In July of 1959, the plaintiff, William E. Kratovil, sued
the defendants, Walter A. Thieda and Jean M. Thieda, his
wife, on a promissory note payable in installments to bearer,
signed by the defendants and Edward D. Herdlicka, and
delivered to the plaintiff in July of 1956. The complaint
alleged the making of the note, its partial payment and ma-

turity, and sought judgment for the balance remaining due. After the defendants had answered, a default judgment was entered for the plaintiff in April, 1961. The circumstances under which this default judgment was vacated upon the defendants' petition in May of 1964 are described in the opinion of the appellate court. 62 Ill. App. 2d 234, 236.

The defendants' petition to vacate the judgment was ordered to stand as their answer to the original complaint. The petition alleged that Edward D. Herdlicka had sought a loan of $3500 from the plaintiff, and the plaintiff asked that Herdlicka have someone who owned real estate secure the obligation. Herdlicka requested the defendants to sign his note as sureties or guarantors. The plaintiff then asked the defendants to sign a note for $3850, secured by a trust deed on property owned by the defendants. The defendants signed the note as makers with Herdlicka, who received the entire proceeds of the loan. The petition also alleged that thereafter the plaintiff entered into a binding agreement with Herdlicka to extend the time for payment of the note, by decreasing the amounts of monthly installments, without the knowledge, consent or approval of the defendants.

The plaintiff's reply reiterated the making of the note, its partial payment and maturity, and stated that the plaintiff "stands on the face of the note as executed by the defendants under statute in such case made and provided." The plaintiff introduced the note in evidence, the defendants offered no evidence, and on September 25, 1964, the trial court entered judgment in favor of the plaintiff. The appellate court affirmed, (62 Ill. App. 2d 234) and we granted leave to appeal.

A maker of a note may be shown by the evidence to be a surety, (*McKee* v. *Gaulrapp*, 367 Ill. 321, 325; *Walker* v. *Chicago, Madison and Northern Railroad Co.* 277 Ill. 451; *Rogers* v. *Trustees of Schools*, 46 Ill. 428; *Hull* v. *Peer*, 27 Ill. 312), and when the plaintiff chose to stand "on the face

of the note as executed by the defendants", he admitted the truth of the factual allegations in the defendant's petition including their status as sureties. (Ill. Rev. Stat. 1963, chap. 110, par. 40(2).) The sole question before us, therefore, is whether, under the law as it existed when the note was made the defendants could assert this defense of a surety in an action brought by the original holder on a note signed by the defendants as makers.

Under the Uniform Commercial Code, which went into effect on July 1, 1962, this defense would be available against one who, like the plaintiff, is not a holder in due course. (Ill. Rev. Stat. 1965, chap. 26, pars. 3—415(3), 3—606.) And before the adoption of the Negotiable Instruments Act in 1907, the long-standing rule discharged the surety in these circumstances. (See, *e.g., Ward* v. *Stout* (1863), 32 Ill. 399, 409-10.) Although the precise question before us has not been decided by this court under the Negotiable Instruments Act, (Ill. Rev. Stat. 1957, chap. 98, par. 21 *et seq.*), it has confronted many other courts, and the resulting decisions have not been uniform, either in result or in approach.

The differences stem from the language of section 29 of the Negotiable Instruments Act: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party * * *." (Ill. Rev. Stat. 1957, chap. 98, par. 49.) Since the "holder" of a note is the "payee or indorsee * * * or the bearer thereof," (Ill. Rev. Stat. 1957, chap. 98, par. 213), and a "holder for value" is a holder who has given value, (Ill. Rev. Stat. 1959, chap. 98, par. 46), the act literally says that the payee or bearer of a note may sue "on the instrument" even though he has notice of defects and defenses and is not a holder in due course as

defined in the statute. Ill. Rev. Stat. 1957, chap. 98, par. 72 *et seq.*

Section 191 of the act states that "The person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are 'secondarily' liable." (Ill. Rev. Stat. 1959, chap. 98, par. 214.) Since the defendants signed as makers, they are "primarily liable." The act contains no provision governing the discharge of parties primarily liable. Section 118 of the act states grounds for the discharge of a negotiable instrument, and does not refer to an extension of time, while section 119, which provides for the discharge of persons secondarily liable, expressly includes as a ground of discharge "an agreement in favor of the principal debtor binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent prior or subsequent of the party secondarily liable * * *." Ill. Rev. Stat. 1959, chap. 98, pars. 140, 141.

Upon the ground that these provisions of the act were intended to be exclusive, a majority of the courts that have considered the question have held that the accommodation maker is not discharged by an extension of time made without his consent, and may not raise this defense even against the payee or an immediate holder with notice. See, *e.g.,* *Vernon Center State Bank* v. *Mangelson,* 166 Minn. 472, 208 N.W. 186, Anno., 48 A.L.R. 710; *Peter* v. *Finzer,* 116 Neb. 380, 217 N.W. 612, Anno., 65 A.L.R. 1419; *Mortgage Guarantee Co.* v. *Chotiner,* 64 P.2d 138, Anno., 108 A.L.R. 1080.

Not all courts that have considered the question have reached this result, and it has been criticized. (See, *e.g.,* Brannan, (Beutel, 7th ed., 1948,) Negotiable Instruments Law, 563-88.) We think that it is not necessary now to canvass the views that have persuaded some courts to a contrary conclusion. The problem was exposed long ago, and

the desirability of amending the Uniform Act to eliminate it was then considered. (See, Turner (Steffen), A Factual Analysis of Certain Proposed Amendments to the Negotiable Instruments Law, (1929) 38 Yale L. Journ. 1047; *cf.* Hilpert, Discharge of Latent Sureties (1940) 50 Yale L. Journ. 387.) Apparently no amendments were recommended by the Commissioners on Uniform Laws, and certainly the Illinois statute was not amended. An additional consideration supporting the majority position was noted by the Supreme Court of California in 1936, when it adopted that view after a full analysis: "We are the less reluctant to so hold because of the fact that the defense of an extention of time is one of the more technical suretyship defenses, the injuries resulting to the surety by reason thereof being more likely to be theoretical than real. Hon. Benjaman N. Cardozo, a Ministry of Justice, 35 Harv. L. Rev. 113, 117; Raymond, Suretyship at Law Merchant, 30 Harv. L. Rev. 157." (*Mortgage Guarantee Co.* v. *Chotiner,* 64 P.2d 138, 144, 108 A.L.R. 1080, 1088.) We conclude that we should abide by the majority construction of the statute, and that the defendants are precluded from raising the defense asserted in their petition to vacate the judgment.

Our own decisions offer no impediment to this conclusion. *Prudential Insurance Co.* v. *Bass,* 357 Ill. 72, is relied upon by the defendants. That case, and *Conerty* v. *Richtsteig,* 379 Ill. 360, both involved situations in which a mortgagor transferred the mortgaged property, and the mortgage debt was assumed by the grantee. In each case the mortgagee thereafter entered into an extension agreement with the grantee without the knowledge or consent of the mortgagor. In the *Bass* case, after a full analysis of the rights of the parties and after determining that the original mortgagors had become sureties, the court curiously did not rely upon section 119 of the act, which clearly states that a surety is discharged by such an extension. (Ill. Rev. Stat. 1957, chap. 98, par. 141.) Rather the court held that the

252

mortgagors were discharged from liability for a deficiency judgment through the operation of section 195 of the Negotiable Instruments Act which provides: "In any case not provided for in this act, the rules of the law merchant shall govern." (Ill. Rev. Stat. 1957, chap. 98, par. 218; 357 Ill. at 78.) In *Conerty* v. *Richtsteig,* however, the court set the matter straight by reiterating that the transactions between the mortgagor, grantee and mortgagee effected "a complete change of the relation of the parties to the contract of indebtedness as written in the note", and holding that the mortgagor became a surety with the result that "[T]he mortgagee cannot extend the time of payment to the grantee without thereby releasing the original maker. * * * Section 119 of the Negotiable Instruments act so provides. Ill. Rev. Stat. 1941, chap. 98, par. 141." (379 Ill. at 364, 365.) The discharge of the original mortgagor in these cases resulted from the change in the relation of the parties which placed him in the position of a surety. There was no such change in the present case.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.