JOHN K. FULLER v. ELEANOR QUESNEL.[1]

December 24, 1895.

Nos. 9600—(211).

**Promissory Note—Surety—Notice—Extension.**

Evidence considered, and *held*, that it conclusively proved that defendant was a mere surety on the note sued on, and that, with knowledge of that fact, the plaintiff, without her consent, granted an extension of the time of payment to the principal debtor.

**Same—Extension—Reply.**

Reply construed as admitting that an extension was in fact given to the principal debtor.

**Same—Notice.**

To charge the plaintiff with notice that defendant was a surety, it was not necessary that he had actual knowledge of the fact, or was guilty of bad faith in not making inquiry. It was sufficient if he had knowledge of such facts as would have put a reasonably prudent man upon inquiry, which, if followed up, would have presumably resulted in knowledge of the fact.

**Same.**

The first rule only applies to the purchase of negotiable paper for value before maturity, but in dealing with the parties to the paper after it is purchased the usual and ordinary rule as to notice applies.

[1] Reported in 65 N. W. 634.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial. Affirmed.

*William G. White*, for appellant.

*J. L. Macdonald*, for respondent.

MITCHELL, J. Action on a promissory note. One of the defenses was, in substance, that if defendant executed the note, she did so merely as surety for her husband, who was also a maker, and that the plaintiff, without her consent, made an agreement with her husband whereby the time of payment was extended for five years, whereby plaintiff was released. When the evidence closed, the court, on this ground, directed a verdict for the defendant. To justify this, of, course, the following facts must have been conclusively established: First, that defendant was a mere surety; second, that plaintiff was chargeable with notice of that fact; third, that plaintiff did make with the principal debtor a binding agreement extending the time of payment; and, fourth, that such extension was granted without defendant's consent.

That defendant, if liable at all on the note, was a mere surety, and that the extension, if granted, was without her knowledge or consent, were so conclusively established that plaintiff's counsel does not seriously dispute the fact. That an extension was granted to the principal debtor, as alleged in the answer, is admitted in the reply. If the extension was not a binding one,—that is, for a valuable consideration and for a definite time,—it was not, in legal contemplation, an extension at all. The admissions in the reply must be construed as having been made with reference to this fact. We also think that the evidence conclusively proved an extension, but it is not necessary to place our decision on that ground.

The only question in the case worthy of special notice is whether the evidence conclusively established that plaintiff was chargeable with notice that defendant was a mere surety on the note. The point is made that the answer does not allege that the plaintiff had notice that defendant was only a surety. But the evidence on that point went in without objection, and upon the record we must hold that that issue was litigated with the consent of the plaintiff, and hence that the defect, if any, in the answer, was waived by him. Plaintiff's contention is that it is not sufficient, to charge

him with notice that defendant was surety, that such facts were brought to his knowledge as would have put a person of ordinary prudence upon inquiry, which, if pursued, would have resulted in his ascertaining the fact.    He claims that the same rule should be applied which obtains in favor of the indorsee for value before maturity of negotiable paper, viz. that he must have had actual notice, or been guilty of such gross or intentional omission to make inquiry as would amount to positive bad faith.    The rule invoked is an exceptional one, designed to encourage the transfer of negotiable paper, and to protect purchasers of it.    It only applies to the act of purchasing, and is designed, exclusively, to protect purchasers of such paper against defenses to the paper in the hands of the payee or prior holder.    It has no application to dealings between the parties after it is purchased.    To such matters the ordinary rule applies, to wit, that a party is chargeable with notice of a fact when knowledge of such facts is brought home to him as would have put a reasonably prudent man upon inquiry, which, if followed up, would presumably have resulted in knowledge of the main fact.

In this case the note and collateral real-estate mortgage securing it were executed to the Minnesota Loan & Trust Company, who afterwards transferred them to the plaintiff.    The note was executed in April, 1886, and was payable January 1, 1889, with interest payable semiannually, with a coupon attached for each instalment of interest.    The note ran, "I promise to pay," etc., as if intended to be executed by only one person.    While the principal note (which referred to the coupon notes as attached) was signed by both the plaintiff and her husband—the coupon notes were signed by the husband alone.    The collateral mortgage, which was executed by both the husband and the wife, described the note as "having been executed by Edward Langevin."    The condition of the mortgage was that "Edward Langevin, one of said parties of the first part, [should] well and truly pay or cause to be paid to the said party of the second part," etc., "the sum of twenty thousand dollars." The covenants of title to the mortgaged premises were those of Edward Langevin alone, and were to the effect that he was lawfully seised, and had good right to convey, etc.    The personal covenant to pay the mortgage debt was that of Edward Langevin alone. These peculiar facts were all apparent on the face of the papers,

and were so unusual that they must of necessity have attracted the attention of any man of ordinary intelligence, and aroused his suspicions that there was some mistake, or something out of the ordinary course of things in regard to the wife's signature to the principal note, and have put him on inquiry in regard to it.   Indeed, it seems to us that to refrain from inquiring, under the circumstances, would almost amount to bad faith.   But, in addition to all this, when plaintiff granted the extension he dealt with the husband alone, and took his individual coupon notes for the interest during the period for which payment of the principal note was extended.   The trial judge was right in holding, as a matter of law, that plaintiff was chargeable with notice of defendant's relation to the note.   He was put on inquiry, and if he had followed it up he would presumably have ascertained that defendant was, at most, only surety for her husband, or, as is more likely, that she had signed the note by mistake, and was not liable on it at all.

Order affirmed.