GUSTAVE PETER. ET AL., APPELLANTS, V. JACOB FINZER, APPELLEE.

FILED JANUARY 24, 1928. No. 25196.

*L. C. Chapman, F. C. Radke* and *Magdelene C. Radke,* for appellants.

*Dafoe & Dafoe* and *Jay C. Moore, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

This is an action at law upon a promissory note. The defense was, that at the time the action was instituted, the defendant's actual relation to the paper sued upon was that of a surety who had been discharged by reason of a lawful extension of the time of maturity, without his con-

sent, made by the holder, to the then principal upon the obligation. Trial was had to a jury, resulting in a verdict for the defendant, from which plaintiff appeals.

The essential facts out of which this action arose, as disclosed by the record, are as follows: On March 2, 1918, defendant Finzer, for a valuable consideration, made and delivered to one Robert Sieber, as guardian for Charlotte Peter his promissory note, negotiable in form, and also to secure the payment of the same, executed and delivered to said guardian a certain real estate mortgage covering certain real estate then owned by the mortgagor. The plaintiffs in this action lawfully derive their title to the note from Sieber, the guardian. They elected to bring an action at law upon the note alone, claiming, in this action, no rights under the terms of the mortgage given to secure the same. Defendant Finzer filed an answer: (1) Admitted the execution of the note sued upon; (2) alleged the contemporaneous execution and delivery of the mortgage to secure the same; (3) that subsequently, by mesne conveyances, the mortgaged premises were conveyed by the mortgagor to Bodie, by Bodie to Jobes, and by Jobes to Cayou, and by Cayou to Rapp; that, as parts of each of the transactions above referred to, there was, for a valuable consideration, an assumption of the mortgage indebtedness by each of the grantees above set forth, and in each deed of conveyance, above referred to, appears the recital of such assumption as part of the consideration of such conveyance by the respective grantees therein named; that Sieber, as guardian, had actual knowledge of all the facts set forth, and with such knowledge, upon maturity of the note evidencing the obligation in suit, without the consent of the defendant, made certain valid agreements of extension of the time of maturity of indebtedness with certain of the grantees above named who had previously assumed and agreed to pay the same.

On the basis of the facts set forth in his answer, the defendant, in the court below, as a matter of law, contended that, where one buys land incumbered by a mortgage

debt and, as part of the consideration of purchase, assures the payment thereof, his promise creates a principal obligation which the mortgagee may enforce against him; that the maker of the note and mortgage thereafter, between the parties, sustain the relation of surety only; that a subsequent agreement by the mortgagee and payee with such subsequent grantee, without the assent of the grantor and mortgagor, extending time of payment of the debt, evidenced by the note and mortgage which has been assumed by such grantee, discharges the maker and mortgagor from all personal liability thereon. This conclusion seems fully supported by the doctrine announced by this court in *Merriam v. Miles,* 54 Neb. 566, determined in 1898.

The controlling question now presented is, to what extent, if any, has the doctrine thus announced been modified or affected by the provisions of the Nebraska negotiable instruments act adopted, effective August 1, 1905?

It may truly be said of this legislation: "It is matter of common knowledge that the negotiable instruments act was drafted for the purpose of codifying the law upon the subject of negotiable instruments and making it uniform throughout the country through adoption by the legislatures of the several states and by the congress of the United States. The design was to obliterate state lines as to the law governing instrumentalities so vital to the conduct of interstate commerce as promissory notes and bills of exchange, to remove the confusion or uncertainty which might arise from conflict of statutes or judicial decisions amongst the several states, and to make plain, certain and general the controlling rules of law. Diversity was to be moulded into uniformity. This act in substance has been adopted by many states. While it does not cover the whole field of negotiable instruments law, it is decisive as to all matters comprehended within its terms. It ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The

language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different states.

"Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, * * * is 'to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute." *Union Trust Co. v. McGinty,* 212 Mass. 205.

This court is committed to the doctrine that, so far as applicable, the provisions of our negotiable instruments act determine the mutual rights of the immediate parties to the instrument as between themselves. *Bank of Commerce & Savings v. Randell,* 107 Neb. 332.

Finzer, at its inception, was the sole maker of the instrument in suit.

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse." Comp. St. 1922, sec. 4671.

Section 4801, Comp. St. 1922, provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

It would seem incontestible that Finzer, by the terms of the instrument in suit, being absolutely required to pay the same, is "primarily" liable thereon. The language of section 4801, *supra,* affirmatively excludes him from the classification of "secondarily" liable.

Article VIII of our negotiable instruments law covers the subject of discharge of negotiable instruments. The first section thereof provides: "A negotiable instrument is discharged: First. By payment in due course by or on behalf of the principal debtor; Second. By payment in due course by the party accommodated where the instrument is made or accepted for accommodation; Third. By the intentional cancelation thereof by the holder; Fourth. By any other act which will discharge a simple contract for the payment of money; Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Comp. St. 1922, sec. 4729.

Applicable to those exclusively who are "secondarily" liable on negotiable instruments, the second section of article VIII provides: "A person secondarily liable on the instrument is discharged: First. By any act which discharged the instrument; Second. By the intentional cancelation of his signature by the holder; Third. By the discharge of a prior party; Fourth. By a valid tender of payment made by a prior party; Fifth. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; Sixth. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved." Comp. St. 1922, sec. 4730.

It may also be said that the statute under consideration makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. This act further provides in definite terms that the instrument, and hence one primarily liable, is discharged in one of the five ways set forth in section 4729, Comp. St. 1922, above quoted. There is no mention in this section of a discharge of a person "primarily" liable by an extension of time. But, among the ways in which a party "secondarily" liable may be dis-

charged as above set forth, in section 4730, *supra,* is "any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable," etc. Whatever interpretation might be required of section 4729, *supra,* containing an enumeration of the ways in which the instrument, and consequently the parties primarily liable thereon, might be discharged, if this provision stood alone, the inference arising from the omission of extension of time from such enumeration, and its inclusion among the ways in which parties "secondarily" liable may be discharged as above set forth in section 4730, *supra,* necessitates and renders irresistible the conclusion that the legislature did not intend that persons primarily liable should be discharged in that manner. Or, in other words, parties to a negotiable instrument primarily liable thereon may be discharged only in the manner provided by statute.

The conclusion follows that the extension of time set forth in defendant's answer did not constitute a valid defense to the action upon the note in suit, in view of the fact that the defendant was, under the terms of the statute, primarily liable thereon, and that the verdict of the jury and judgment of the district court are not supported by the evidence. This conclusion is, in principle, in full accord with the great weight of authority in other states, as will be seen by the following cases: *Cowan v. Ramsey,* 15 Ariz. 533; *Hall v. Farmers Bank,* 74 Colo. 165; *Fox v. Terre Haute Nat. Bank,* 78 Ind. App. 666; *Niotaze State Bank v. Cooper,* 99 Kan. 731; *First State Bank v. Williams,* 164 Ky. 143; *Vanderford v. Farmers & Mechanics Nat. Bank,* 105 Md. 164; *Jamesson v. Citizens Nat. Bank,* 130 Md. 75; *Hager v. Hagerstown Bank,* 138 Md. 252; *Union Trust Co. v. McGinty,* 212 Mass. 205; *Vernon Center State Bank v. Mangelsen,* 166 Minn. 472, 48 A. L. R. 710; *Richards v. Market Exchange Bank Co.,* 81 Ohio St. 348; *Cleveland Nat. Bank v. Bickel,* 59 Okla. 279; *Oklahoma State Bank v. Seaton,* 69 Okla. 99; *Smith v. Minneapolis Thresh-*

*ing Machine Co.,* 89 Okla. 156; *Cellers v. Meachem,* 49 Or. 186; *Lumbermen's Nat. Bank v. Campbell,* 61 Or. 123; *Murphy v. Panter,* 62 Or. 522; *Farmers State Bank v. Forsstrom,* 89 Or. 97; *Graham v. Shephard,* 136 Tenn. 418; *Clem v. Chapman,* 262 S. W. (Tex. Civ. App.) 168, and 278 S. W. (Tex. Civ. App.) 1114; *Neyland v. Lanier,* 273 S. W. (Tex. Civ. App.) 1022; *Wolstenholme v. Smith,* 34 Utah, 300.

Nor does this conclusion conflict with the decision of this court in *Huber Mfg. Co. v. Silvers,* 85 Neb. 760. It appears in that case that the notes in suit bore date of June 10, 1903. Section 193, ch. 83, Laws 1905, expressly provides that its provisions "do not apply to negotiable instruments made and delivered prior to the taking effect hereof," viz., August 1, 1905 (Laws 1905, ch. 83, sec. 198.)

The conclusion follows that the doctrine announced in *Merriam v. Miles, supra,* has been, in effect, superseded by the provisions of the Nebraska negotiable instruments act above referred to, and that, in the entry of the judgment appealed from, the district court erred.

The judgment of the district court must be, and is,

REVERSED.