JEFFERSON COUNTY BANK v. HERBERT ERICKSON
AND OTHERS.
NELS W. NELSON, RESPONDENT.[1]

March 3, 1933.

No. 29,228.

[1]Reported in 247 N. W. 245.

*T. J. Mangan,* for appellant.
*R. G. Cushing,* for respondent.

HOLT, JUSTICE.

Plaintiff appeals from the judgment.

The action is upon promissory notes executed by defendants, payable to the order of Petters and Company, a corporation, and by it, for value, indorsed to plaintiff before maturity. Respondent's defense was that plaintiff extended the notes without respondent's knowledge or consent. There was no service on defendant Herbert Erickson, and defendant Zeta Rose Erickson did not answer in time to allow a trial as to her at the time the issues as to respondent were tried. The court made findings in favor of respondent. Appellant's motion for amended findings being denied, judgment was entered.

Most of the facts are stipulated. Some of the inferences to be drawn from the testimony are in dispute. On August 18, 1919, defendants executed their 29 promissory notes to Petters and Company for $15,500, all bearing interest payable semi-annually at five and one-half per cent per annum; all of which have been paid except the last seven, upon which $6,092.67 is now due. On the same date and as part of the same transaction, defendants executed and delivered to Petters and Company a mortgage upon a 240-acre farm in Pope county, which was duly recorded November 29, 1919. Petters and Company thereafter, for value, indorsed said notes,

without recourse, to plaintiff and assigned to it said mortgage, the assignment being recorded December 24, 1919. ·This mortgage was duly foreclosed on February 28, 1931, for $10,500, leaving the deficiencies above mentioned. On March 1, 1920, defendants conveyed the mortgaged farm to Louis Petters and G. E. Petters, then and still the principal officers of Petters and Company, who as grantees assumed and agreed to pay said mortgage debt. Such deed was duly recorded on March 15, 1920. All the notes in suit became due March 1, 1925. On March 4, 1925, plaintiff executed a written extension of the notes and mortgage securing the same, from March 1, 1925, to March 1, 1930, said notes to draw interest at the rate of six per cent per annum, payable semi-annually. Respondent was never notified that plaintiff had become owner of the notes and mortgage mentioned, and neither he nor any of defendants paid any interest or principal on the same. The court also found that, with knowledge of the conveyance of the farm to the Petters, the extension agreement set out in the stipulation was made by plaintiff without the knowledge or consent of respondent, and that it was never authorized, consented to, or ratified by him. The court further found that the farm was worth more on March 1, 1925, than the amount due on the notes secured by the mortgage thereon.

The assignments of error are principally leveled at those parts of the sixth and seventh findings which are:

First, that with knowledge of the conveyance from defendants to the officers of Petters and Company, wherein the vendees assumed and agreed to pay the mortgage debt, the promissory notes in suit, plaintiff executed the extension agreement; and,

Second, that the extension agreement was made by plaintiff without the knowledge or consent of respondent and it was never authorized, consented to, or ratified by him.

In regard to the last mentioned finding it is enough to state that the evidence so requires. We shall confine our opinion to a consideration of the finding that plaintiff entered the extension agreement with knowledge of the conveyance from defendants to the

Petters. If that finding is sustained the judgment must be affirmed, unless the agreement itself lacks validity or the uniform negotiable instruments act prevents.

The conveyance from defendants wherein the vendees assumed and agreed to pay the promissory notes in suit was recorded in March, 1920, about three months after the record of the assignment of the mortgage to plaintiff. Plaintiff cannot be charged with constructive knowledge of the assumption agreement by virtue of the recording of the conveyance, for its purchase of the notes and mortgage occurred before. Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; Norton v. Metropolitan L. Ins. Co. 74 Minn. 484, 77 N. W. 298, 539; 5 Dunnell, Minn. Dig. (2 ed.) § 8291. "Actual notice is synonymous with knowledge." 5 Dunnell, Minn. Dig. (2 ed.) § 7230. "Whenever a person has knowledge of facts relating to a matter in which he is interested which would naturally lead an honest and prudent person to inquire concerning the rights of others in such matter, he is chargeable with notice of everything which such an inquiry, pursued in good faith, with reasonable diligence and ordinary intelligence, would disclose." 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7231. Among the cases cited to sustain the text may be noted Niles v. Cooper, 98 Minn. 39, 107 N. W. 744, 13 L.R.A.(N.S.) 49; Bergstrom v. Johnson, 111 Minn. 247, 126 N. W. 899; Twitchell v. Glenwood-Inglewood Co. 131 Minn. 375, 155 N. W. 621; Brockman v. Brockman, 133 Minn. 148, 157 N. W. 1086; Swaney. v. Crawley, 154 Minn. 263, 191 N. W. 583; Lydiard v. Coffee, 167 Minn. 389, 209 N. W. 263. See also Fuller v. Quesnel, 63 Minn. 302, 65 N. W. 634. In determining whether the finding of knowledge is sustained, we need not point out any particular time when plaintiff obtained knowledge, except that it must be before March 1, 1925; nor, under the principles above stated, need actual knowledge be shown. If, according to Brockman v. Brockman, 133 Minn. 148, 157 N. W. 1086, there was notice enough to incite attention and put the ordinarily prudent person on inquiry, which if pursued would have led to actual knowledge of the deed and its contents, the finding should stand.

The evidence tends to show that defendants had sold the farm to the two officers of Petters and Company on contract; and to finance the transaction defendants gave the notes and mortgage to Petters and Company for the purpose of negotiating the same so as to raise the money to pay the purchase price to defendants. After the notes and mortgage were sold to plaintiff, defendants conveyed the land to the Petters, father and son and principal owners of Petters and Company. Before the notes and mortgage were assigned to plaintiff, one of its chief executive officers examined the mortgaged land, no doubt to ascertain whether it was ample security for the notes. A tenant of the Petters was then in possession. An inquiry of him would have revealed that he was the tenant of the vendees and not of defendants. Plaintiff knew that its assignor, Petters and Company, was not the agent of defendants or representing them. While it accepted the notes indorsed by Petters and Company without recourse, it took a separate contract from the company guaranteeing payment of the interest and principal of the mortgage. By another contract Petters and Company also agreed to repurchase the paper on demand, to collect principal and interest, and remit to plaintiff without charge, and to look after the loan until fully paid. The evidence is conclusive that respondent had nothing to do with the mortgaged premises after the conveyance to the Petters, and that none of defendants paid either taxes or any sum upon the mortgage after it was given.

The correspondence between plaintiff and Petters and Company clearly permitted the court to draw the inference or conclusion that plaintiff knew that Petters and Company was interested in the land and that the mortgagors had parted with their interest and title. There was some testimony that the vendees of defendants, the two officers of Petters and Company, had quitclaimed to the company. On February 5, 1925, plaintiff wrote Petters and Company saying:

"Are you willing to deed these lands to us at this time which will relieve us of the expense of foreclosure?"

Petters and Company answered, four days later, saying:

"There is no question in our minds but what our proposal to continue to pay interest and taxes is better from the bondholders' standpoint than it would be to foreclose or to take title to the land in some other manner. However, you are apparently convinced that it is better to foreclose the mortgage than to accept our proposal and be assured that taxes will be paid each year as well as the interest regardless of the income derived from the security. We can see no reason why we should deed the land to you, but we might consider deeding the Wenger land if you agree to a renewal of the Erickson."

Defendants' mortgage is referred to as the Erickson mortgage. By a letter of February 26, 1925, Petters and Company acknowledged the receipt of a letter from plaintiff agreeing to extend defendants' mortgage five years on condition that the debt should draw interest at six per cent per annum, and $500 of the principal be paid, and inclosed an "extension memorandum" for plaintiff to execute. It was executed, and Petters and Company paid the $500 on the principal and the stipulated interest during the whole extension period. The court could infer from the evidence that about the time the mortgage was given and purchased by plaintiff there was an active market for land at good prices. Real estate mortgages were considered good investments. Lands were continually changing hands. When this mortgage matured conditions had changed materially. Plaintiff was so informed by Petters and Company. Plaintiff wrote to one of defendants, Erickson. Plaintiff was informed by Petters and Company that the letter had been turned over to it. Before granting extension, plaintiff asked for information regarding the responsibility of the mortgagors in case of foreclosure and a deficiency judgment. There is no evidence of any information being given. Instead, the extension requested by the company was executed. It would seem that the court could say that a reasonably prudent person would have been incited to inquiry by the changed conditions and by the content of the letters from the company as to the mortgagors' interest in the mortgaged

premises, and if that inquiry had been pursued the conveyance with the grantees' assumption covenant to pay the mortgage would have appeared. Before plaintiff foreclosed it had the abstract extended. Would not the ordinarily prudent man have done so before granting an extension, especially since none of the mortgagors either directly or indirectly applied for the same? We consider the finding of the learned trial court adequately supported.

It is claimed that the extension agreement is not binding. In this we do not concur. No formal document is required for that purpose. Petters and Company in writing asked for it, and drew the instrument which plaintiff executed. Petters and Company complied with the terms thereof, paying an increased rate of interest during the extended term. In its proposal for extension it agreed to pay such increased interest. A legal consideration, under our decisions, for the extension has been paid, or, in other words, Petters and Company has fully executed its part of the extension agreement, and so has plaintiff. C. S. Brackett Co. v. Lofgren, 140 Minn. 52, 167 N. W. 274, L. R. A. 1918F, 998. The execution of interest coupons for the extended period is sufficient consideration. Amidon v. Traverse Land Co. 181 Minn. 249, 232 N. W. 33. The written proposal of Petters and Company was to pay increased interest for the full period, and so was the extension memorandum prepared by it and executed by plaintiff. There being then a good and legal consideration agreed to be paid by the company for the extended time, there was mutuality of agreement, though the memorandum was not signed by the company. By what Petters and Company did it was certainly estopped from asserting that the extension did not bind it.

Plaintiff concedes that in this state, as well as in most jurisdictions, it is settled law that when a mortgagor conveys the land mortgaged and the vendee assumes and agrees to pay the mortgage, the legal status between the mortgagor and the vendee with respect to the debt secured by the mortgage becomes that of surety and principal; that is, the vendee becomes primarily liable to the holder of the promissory notes or debt secured, and the mortgagor or

maker of the notes secondarily liable; so that if the holder of the notes or debt, with knowledge of such status, extends the time of payment of the debt without the consent of the mortgagor, he, the maker of the notes or original debtor, is released from the same. Groesbeck v. Mattison, 43 Minn. 547, 46 N. W. 135; Travers v. Dorr, 60 Minn. 173, 62 N. W. 269; Sime v. Lewis, 112 Minn. 403, 128 N. W. 468; Kuby v. Ryder, 114 Minn. 217, 130 N. W. 1100; A. B. Klise Lbr. Co. v. Enkema, 148 Minn. 6, 181 N. W. 201; Citizens State Bank v. Peters, 179 Minn. 330, 229 N. W. 129; Amidon v. Traverse Land Co. 181 Minn. 249, 232 N. W. 33; Harris v. Atchison, 183 Minn. 292, 236 N. W. 458.

But it is asserted that under the uniform negotiable instruments act, L. 1913, p. 373, c. 272, G. S. 1923 (2 Mason, 1927) §§ 7044 to 7241, inclusive, the makers of a promissory note are primarily liable to the holder thereof and can never be shown or considered as sureties or secondarily liable. The act declares that one primarily liable can be released or discharged from liability only by one of the five methods specified in § 119, and extension of time is not one of them; but § 120 is one by which a surety may be released; therefore, the conclusion is that respondent, one of the makers of the notes, cannot be released. It is true that in suits on promissory notes not secured by mortgage one who appears as maker on the face of the notes but is in fact an accommodation maker or surety is not released by an extension agreement made with a comaker. It is so held in Vernon Center State Bank v. Mangelsen, 166 Minn. 472, 208 N. W. 186, 48 A. L. R. 710. And in other states, where the uniform negotiable instruments act has been adopted, the courts have applied the law in the same way as this court did under facts similar to those in the case just cited. Cowan v. Ramsey, 15 Ariz. 533, 140 P. 501; First State Bank v. Williams, 164 Ky. 143, 175 S. W. 10; Vanderford v. Farmers & M. Nat. Bank, 105 Md. 164, 66 A. 47, 10 L.R.A.(N.S.) 129; Union Tr. Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525; National Citizens Bank v. Toplitz, 81 App. Div. 593, 81 N. Y. S. 422; Richards v. Market Exch. Bank Co. 81 Ohio St. 348, 90 N. E. 1000, 26 L.R.A.(N.S.) 99;

Citizens Bank v. Knudson, 120 Or. 493, 252 P. 969; Smith v. Minneapolis T. M. Co. 89 Okl. 156, 214 P. 178; Wolstenholme v. Smith, 34 Utah, 300, 97 P. 329.

But the uniform negotiable instruments act does not pretend to lay down the law that is to govern the negotiation of securities or mortgages given as part of the same transaction in which the promissory notes were executed. The indorsement of the promissory notes to plaintiff carried the mortgage, even if there had been no formal assignment thereof. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6276. Here plaintiff took an assignment of the mortgage and made use thereof, extended it, and realized by the foreclosure thereof $10,500. Subsequent to the making of the notes another contract was entered into between the makers of the notes and purchasers of the mortgaged land, which, as between them, made the vendees the principals and the makers sureties of the notes. This of course did not in itself affect the rights of the holder of the notes; but when the holder obtained knowledge of the changed status created by the conveyance, equity forbade the holder making contracts that would prejudicially affect the rights of the makers of the notes except with their consent. If the makers had to pay the notes they had the right of subrogation to the mortgage. Equity considers the makers of notes prejudiced by an extension of time granted without their consent. And in the instant case we have the finding, not challenged, that on March 1, 1925, the farm was worth more than the mortgage debt. The uniform negotiable instruments act does not attempt to declare what the rights of makers and holders of promissory notes shall be where they are secured by mortgage and the mortgaged property is conveyed so as to make the vendee the principal debtor of the debt secured by the mortgage. Under the law the holder had the right to enforce the notes against the vendees without resorting to the makers or the security. Pinch v. McCulloch, 72 Minn. 71, 74 N. W. 897. The following courts have held that makers of promissory notes, secured by mortgage executed by them, become sureties upon conveying the mortgaged premises to vendees who assume and agree to pay the debt

or notes, and when the holder of the notes and mortgage, having knowledge of such conveyance, extends the time of payment without the consent of the makers of the notes, the latter are released. Slottow v. Hull Inv. Co. 100 Fla. 244, 129 So. 577; Albee v. Gross, 250 Ill. App. 98; Isaacs v. Van Hoose, 171 La. 675, 131 So. 845, 848; Codman v. Deland, 231 Mass. 344, 121 N. E. 14; Nelson v. Hudson, 221 Mo. App. 211, 299 S. W. 1111; Shipman v. Terrill, 84 Mont. 322, 276 P. 21; Smith v. Blackford, 56 S. D. 360, 228 N. W. 466; Zastrow v. Knight, 56 S. D. 554, 229 N. W. 925, 72 A. L. R. 379; Howth v. J. I. Case T. M. Co. (Tex. Civ. App.) 280 S. W. 238, 241. It is true that in most of the cases just cited the uniform negotiable instruments act seems to have offered no apparent obstacle to the conclusion reached. In the citations from Louisiana, South Dakota, and Texas the act was interposed as a bar.

In the Isaacs case [171 La. 683] the court said that § 196 of the act provides "that in any case not provided for in the statute the rules of the law merchant shall govern. As we have observed, there is no specific provision in the statute which deals with the precise question here presented, hence under the general provision referred to we are justified in following the rule laid down in our own jurisprudence. That rule in a way has become a rule of property, accepted and acted upon in the commercial affairs of this state, and ought not to be set aside without due notice, under the pretext of conforming to the jurisprudence of other states."

Of § 119 (4), which provides that one primarily liable may be discharged "by any other act which will discharge a simple contract for the payment of money," the court in the Howth case says [280 S. W. 241]:

"Under this latitudinous provision, the door is thrown wide open for the admission of the defense of discharge based on any act of the parties under any provision of a statute or any rule of law or equity."

If no change had occurred in the situation of the parties after the notes in question were executed, the uniform negotiable instru-

ments act would of course have determined the rights of the parties. But the parties dealing with negotiable instruments secured by real estate mortgages must realize that the mortgaged land is bought and sold notwithstanding the mortgage, and that very often the vendees as part of the transaction assume and agree to pay the mortgage. When such transactions occur, the status of the makers of the negotiable notes so secured changes to that of sureties, and the vendees take their place as makers. The holders of such notes in handling the mortgages securing the same, after obtaining knowledge of the change wrought by the assumption agreements, must have regard to the equities arising therefrom. We do not think the uniform negotiable instruments act was intended to interfere with the law as it existed prior thereto on the subject referred to. We cannot follow the contrary decision in Peter v. Finzer, 116 Neb. 380, 217 N. W. 612, 65 A. L. R. 1419.

The judgment.is affirmed.

OLSEN, JUSTICE, took no part.

