INDUSTRIAL TRUST COMPANY *vs.* JAMES GOLDMAN.

JULY 28, 1937.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

Moss, J.  This is an action of assumpsit to recover on a promissory note made by the defendant under date of June 19, 1925, for the sum of $15,000, payable to the order of Jacob Ernstof five years after date, with interest, payable semi-annually in advance at the rate of 8% per annum. The payment of this note was secured by a mortgage deed to Jacob Ernstof executed by the defendant on the date of the note, covering certain real estate in the city of Providence in this state and duly delivered and promptly recorded.

The note was indorsed and delivered and the mortgage was assigned and transferred by Jacob Ernstof to the plaintiff on November 20, 1925, and the instrument of assignment and transfer was then duly recorded.  The note was not paid at its maturity, but the date of its maturity was extended from time to time by the payment to, and the receipt and acceptance by, the plaintiff of interest in advance and certain partial payments of principal were received by the plaintiff.  Finally, on September 19, 1931, the note being then still held by the plaintiff and in default, the mortgaged property was sold by the plaintiff under and in accordance

with the power of sale contained in the mortgage deed; and the net proceeds of the sale were applied in part payment of the note.

On April 7, 1933, the present action was brought to recover the remainder still unpaid on the note and interest; and to the declaration the defendant pleaded the general issue. At the trial of the case before a justice of the superior court and a jury the above facts were proved in detail and a witness for the plaintiff testified that the amount then due on the note, including interest, was $14,359.59. This testimony was not contradicted. At the conclusion of the trial, the trial justice, on the motion of the plaintiff, directed the jury to return a verdict for the plaintiff in that amount. To this direction the defendant took an exception; and the case is now before us on the defendant's bill of exceptions, setting forth that exception and numerous exceptions taken by him to rulings of the trial justice as to the admissibility of certain evidence, which the defendant tried to get before the jury.

The principal, if not quite the only, question of law raised by these exceptions, is the one raised by the refusal of the trial justice to permit the defendant to introduce evidence to prove that on July 24, 1925, he sold and conveyed the property covered by the mortgage to one Samuel Levin, who, by accepting and recording the deed of conveyance and in consideration thereof, assumed the mortgage and agreed with the defendant to pay the note on which the present action is based and the payment of which was secured by the mortgage; that later and before the maturity of the note Samuel Levin conveyed the mortgaged property to one Daniel Marwell, who, likewise, in consideration of the conveyance, assumed the mortgage and agreed to pay the note; and that, thereafter and with notice of these facts, and without the consent of the defendant and indeed against his protests, the plaintiff repeatedly, by receiving from Daniel Marwell payments of interest in advance on the note, extended its date of maturity.

The defendant, in offering this evidence, contended, in substance, that the result of these transactions between him and Levin, and between the latter and Marwell, was that as among themselves Marwell became primarily liable for the payment of the mortgage debt in accordance with the terms of the note and the defendant and Levin became only sureties for the payment of this debt. It contended also that the plaintiff, by his dealings with Marwell, recognized and accepted this change in the situation; and that by thus agreeing with Marwell for extension of the maturity of the note, without the assent and against the protest of the defendant, it released the defendant from all liability on the note.

The trial justice excluded this offered evidence, solely on the ground that under general laws 1923, chapter 227, being the negotiable instruments law, the facts which this evidence was offered to prove would not constitute a defense for the defendant in this action. Exceptions were taken by the defendant to numerous rulings by the trial justice excluding such evidence on this ground. It is not in dispute that the receipt by a noteholder of interest in advance to a date beyond the maturity of the note involves an agreement by him extending the maturity to that date.

The question raised by the exclusion of the offered testimony on the above ground is one that has been the subject of much controversy in a number of states since their enactment of the uniform negotiable instruments act and the subject of much discussion by textwriters and by commentators on the cases. The decisions are not numerous and are fairly evenly divided between the two sides of the question.

Before the enactment, in the several states, of the uniform negotiable instruments law, hereinafter referred to as the N. I. L., there was much controversy as to whether such facts as the defendant in this case offered to prove constituted a defense to the maker of a note, when an action was brought against him thereon. But in the great majority of the states in which that question was decided the decisions

were in favor of the defense. This is virtually admitted by the plaintiff's counsel in the instant case.

This question, apart from the N. I. L., seems never to have been squarely decided in this state. It was, however, decided in *Urquhart* v. *Brayton,* 12 R. I. 169 (1878), in an opinion by *Durfee, C. J.,* that where property subject to a mortgage had been conveyed and the grantee, in consideration of the conveyance, had assumed the mortgage and agreed to pay the mortgage debt, the mortgagee could maintain an action against the grantee for nonpayment of that debt at its maturity. This decision seems to have been based by the majority of the court on the theory that, by thus accepting the grantee's agreement with the mortgagor to pay the mortgage debt and bringing action upon it, the mortgagor had completed a novation. It would seem to follow logically from this that the mortgagee must have thereby released the mortgagor as his consideration for the novation. But that conclusion has never been made the basis of a decision for a mortgagor in any later case in this state.

In *Mechanics' Savings Bank* v. *Goff,* 13 R. I. 516, (1882), a mortgagor B had conveyed the mortgaged property to A, who conveyed it to D, and D then conveyed it to E, each successive grantee assuming and agreeing to pay the mortgage indebtedness to the mortgagee, as a part of the consideration for the conveyance. It was held, *Durfee, C. J.,* again writing the opinion, that the mortgagee could maintain an action against the second grantee for non-payment of the indebtedness. It was suggested by the court that the case might be regarded as one of novation or as one of the retention by the defendant grantee, for the benefit of the mortgagee, of a part of the purchase money.

In *Wood* v. *Moriarty,* 15 R. I. 518, 9 A. 427 (1887), it was held, in an opinion by *Durfee, C. J.,* that if B, being a debtor of C, makes an agreement with A whereby A, for a consideration moving from B, assumes B's debt to C, then C may maintain an action against A for the debt; and that,

by the bringing of such action, the contract between B and A is adopted by C as made for his benefit by B. The court, arguendo, also said that C, by bringing an action against A discharges B. The court said that the contract as between A and B was not collateral but substitutional. *Urquhart* v. *Brayton, supra,* was cited with approval. In *Phenix Iron Foundry* v. *Lockwood,* 21 R. I. 556, 45 A. 546 (1900), the same general view was taken, the court stating that, as said in *Urquhart* v. *Brayton,* the transaction was "practically a novation."

In *Kehoe* v. *Patton,* 23 R. I. 360, 50 A. 655 (1901), also a simple case of an agreement by one party to pay the other party's debt to a third person, the same idea was applied and *Urquhart* v. *Brayton* was cited as authority. It was cited again as an authority in *Smith* v. *Union Insurance Co.,* 25 R. I. 260, 55 A. 715, (1903), together with *Wood* v. *Moriarty, supra,* and *Kehoe* v. *Patton, supra. Wood* v. *Moriarty* was again cited as an authority in a *dictum* in *Burt* v. *Modern Dye & Rug Works, Inc.,* 48 R. I. 490, 139 A. 312 (1927). This line of authorities was also cited and recognized as in force in *Blake* v. *Atlantic National Bank,* 33 R. I. 464, 82 A. 225 (1912).

The case of *Urquhart* v. *Brayton, supra,* and other cases in this state which have followed it do not directly and clearly support the majority doctrine at common law that a mortgagor is discharged by a valid agreement made, without his assent, between the holder of the mortgage and a grantee of the mortgaged property who had assumed and agreed to pay the mortgage indebtedness, extending the date for the payment of such indebtedness, but they are certainly in harmony with the result of the application of this doctrine in mortgage assumption cases. The only difference would seem to be that under the reasoning of the former cases the result would be reached on the doctrine of novation, while in the latter cases it would be reached on a doctrine of the law of suretyship.

The opinion of this court in *The Hamilton Co.* v. *Rosen,* 53 R. I. 346, 166 A. 691 (1933), so far as it goes, indicates that the law of this state is in accordance with this majority doctrine at common law. There a mortgagor had conveyed the mortgaged property to the defendant, and this court said: "If defendant knowingly assumed payment of the mortgage note, he thereby became surety for the payment of the same by any subsequent grantee taking the premises subject to the mortgage, and would not be released from liability unless the time of payment of the same was extended by a binding agreement based upon a good consideration." The court then cited some authorities which support the above majority common law rule. In this *Rosen* case, of course, the N. I. L. was not involved, but the only reasonable conclusion from the opinion is that it was the view of this court at that time that, apart from that statute, the mortgagor would also be discharged from his liability by the extension agreement, if made without his consent. Therefore, we hold as a basis for the rest of this opinion that this majority common law rule, apart from the N. I. L., is in force in this state, without trying to determine whether it is based here on the one doctrine or the other. If it is based on the doctrine of novation, the N. I. L. will give rise to no serious difficulty in applying the rule to the instant case, for a reason that will appear later in this opinion. Hence, to give the plaintiff the benefit of any doubt as to the basis of the common law rule here, we shall assume, without deciding, that such basis is a doctrine of the law of suretyship.

This common law doctrine, of the discharge of a mortgagor by such an extension agreement, is only a special form of the general doctrine, supported by the weight of authority, that if P, for a valuable consideration received by him from D, agrees with D to pay D's debt to C, P becomes the principal debtor and D a surety, as between themselves, and that D is discharged from the debt by any binding agreement made by C with P, with knowledge of P's agreement with D and without D's consent, for an extension of

the date for the payment of the debt. 2 Williston on Contracts, (rev. ed.) §§ 381-383, 386, 388; Stearns on Suretyship, (4th ed.) §§ 23, 90; 1 Brandt on Suretyship, (3d ed.) 3-6, 107-113; 3 Pomeroy on Equity Jurisp. (4th ed.) § 1206; 21 R. C. L. 955, "Principal and Surety", § 10.

The cases in which it has been held that with the N. I. L. in force a mortgagor is not discharged in such a case as the instant one, and on which the present plaintiff mainly relies, are based on the reasoning that in sec. 120 of the N. I. L., (G. L. 1923, chap. 227, sec. 126), it is provided that "A person secondarily liable on the instrument is discharged: . . . 6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.", while there is no such provision in the next preceding section dealing with the discharge of the instrument. The courts in those cases, expressly or by implication, also apply to this preceding section the maxim *"Inclusio unius est exclusio alterius,"* from which they draw the conclusion that the section prevents the discharge of a negotiable instrument in any way not specified therein.

One defect in this line of reasoning is that, as this court has pointed out, the maxim relied upon requires great caution in its application, in all cases, and is applicable only under certain conditions. *In Re The Constitutional Convention,* 55 R. I. 56, 69, 72, 178 A. 433, 440, 441. These conditions are not present with regard to this section, where it would have been very easy to say: "A negotiable instrument is discharged in, and only in, one of the following ways," if that had been the legislative intent.

But the most obvious and, in our opinion, a conclusive objection to the above line of reasoning is that the fourth method of discharge set forth in this section 119 of the N. I. L. is "By any other act which will discharge a simple contract for the payment of money." Under this provision

it has been held over and over again by the courts of many states—and we have found no authority to the contrary—that a negotiable instrument may be discharged by a novation or accord and satisfaction. See cases cited in *Beach* v. *Bello*, 58 R. I. 445, a very recent opinion by this court.

We can see no reason why it should not likewise include a discharge by the application of one of the well-settled rules of the law of suretyship, *viz.*, the rule, above stated and discussed, as to the discharge of an original debtor by a binding extension agreement, made without his consent, between his creditor and one who, by agreement with the debtor, has assumed the payment of the debt. By this rule, if the debt is represented by a promissory note, and the extension of its date of payment is made by agreement between its legal holder and the third person who has assumed its payment, then the maker of the note, and therefore the note itself, are discharged, as between its holder and all parties to it, although the third person remains bound to pay the debt represented by it, in accordance with the terms of the note, as thus extended.

It is therefore our conclusion that if the defendant in the instant case had proved the facts which he offered, but was not permitted to prove, they would have constituted a defense, under the above-quoted subdivision 4 of G. L. 1923, chap. 227, sec. 125, since the extension granted by the plaintiff to Marwell under the circumstances would be an act which would discharge a simple contract for the payment of money. As against this conclusion, the plaintiff mainly relies upon a few cases in which under similar facts the opposite result has been reached. All of these will now be discussed.

The first case thus relied on by the plaintiff is *Continental Mutual Savings Bank* v. *Elliott,* 166 Wash. 283, 6 P. (2d) 638 (1932). There the facts were substantially the same as they would be in the instant case, if the defendant proved what he offered to prove; and it was held that because of the N. I. L. the mortgagor-maker was not discharged. This

result was reached on the authority of the cases in which it had been held that under the N. I. L. an accommodation maker of a negotiable note is not discharged by a binding agreement between the holder of the note and the accommodated party for an extension of the date of its maturity, although the holder had not secured the consent of the maker in question and knew that he was an accommodation maker. The court said, with reference to the case before it: "The respondent, being the maker of the note and primarily liable thereon, cannot be in any more favorable position . . . than would an accommodation maker."

On the contrary the two types of cases seem to us to be governed by quite different rules. If a man signs a note as maker, he thereby, under the express language of the N. I. L., makes himself a party primarily liable thereon as to all parties to the note; and the holder in all his dealings with *all other parties thereto* has the right to treat him as a party primarily liable. If the accommodation maker had wished to be only secondarily liable he could easily have signed only as indorser; but very likely the holder would not have taken the note at all, if the accommodating party had been only an indorser. A decision that, because of a separate agreement existing between the accommodating and accommodated parties at the time when the former signed the note as maker, the holder, when informed of this separate agreement, must thereafter, without his consent and without receiving any consideration for so doing, treat the accommodation maker as only a surety for another party to the note may very reasonably be held to be in violation of the express terms of the note and of the N. I. L.

But the situation is to our minds radically different where an outside person, *not a party to the note,* for a valuable consideration received from its maker, agrees with him to pay the note in accordance with its terms. There the holder of the note has his option either to ignore this new agreement and stand on the note itself or to avail himself of the new agreement as made for his benefit, as well as for that

of the maker of the note, and to treat the outside person as henceforth his debtor for the payment of the indebtedness represented by the note. In this situation it is not unreasonable or unjust to the holder of the note to hold that by choosing the latter alternative he for a valuable consideration has either, according to the doctrine of novation, released the maker and all other parties liable on the note, or else, according to the suretyship doctrine applied by most courts, has become bound to treat the note as only collateral security for the payment of such indebtedness by the new debtor. Under the latter doctrine this leaves the rights and duties of all parties who are liable on the note just as they were before, *as among themselves;* and we cannot see that it is in violation of the N. I. L. or inconsistent with the above-mentioned rule applicable to accommodation maker cases.

The two types of cases are also, in our opinion, distinguishable on another ground. As we have said *supra,* a discharge of a note by a valid agreement for an extension of its maturity date, made, without consent of the maker, between the holder and an outside person who, for a valuable consideration, has assumed the payment of the indebtedness represented by the note, can properly be held to be a discharge by the fourth method set forth in the section of the N. I. L. relating to the discharge of negotiable instruments. But the discharge of an accommodation maker by an extension agreement between the holder and the accommodated party on a negotiable note cannot be held to come within that fourth method of discharging a negotiable instrument. For discharge by such an agreement would be only a discharge of the accommodating party, leaving the note still in force, at least as to the accommodated party.

For the above reasons we are of the opinion that the decisions in accommodation maker cases under the N. I. L., which were relied on by the Washington supreme court in the above *Elliott* case and by most other courts that have rendered decisions in accord with that case, and which are

relied on by the plaintiff in the instant case, do not support the plaintiff; and the fact that they have been much relied on in most of the cases cited in support of the plaintiff's contention in the instant case greatly lessens the weight to be given the cases thus cited.

Later in the same year the case of *Gillman* v. *Purdy*, 167 Wash. 659, 9 P. (2d) 1094, was decided. There the defendant, vendee of real estate, who had not completed his payments under his contract of purchase with the plaintiff, vendor, sold and transferred all his rights in the land and under the contract to a third person, who agreed to complete the payments. Later the plaintiff, with knowledge of these facts and without the consent of the defendant, made a valid agreement with the third person to extend the time for the payment of the unpaid installments of the purchase price under the original contract. The court held that the defendant was thereby discharged, and said that the same rule applied as in the mortgage assumption cases at common law. It distinguished the case from the *Elliott* case on the ground that in the latter case the construction of the N. I. L. was involved, while in *Gillman* v. *Purdy* it was not. But in the later case a simple contract for the payment of money was discharged by a certain act of the plaintiff; and it seems clear to us that under subdivision 4 of sec. 119 of the N. I. L., if the deferred payments under the contract of purchase had been represented by a negotiable note, it would have been discharged by the same act.

The next year in *Blaine* v. *Gwinn, Inc.*, 172 Wash. 505, 20 P. (2d) 855, a mortgage assumption case, but with complications which, the majority of the court said, made the regular doctrine inapplicable, the same court said that it was committed to the doctrine that when a mortgagor conveys the mortgaged property to one assuming the debt, the law of suretyship "places the mortgagee in a position where he must deal, at his peril, with a debtor not of his own choice." The N. I. L. was not mentioned, though the note in that case was governed by it, nor was the *Elliott*

case mentioned. It should be noticed in this connection that in *North Pacific Mortgage Co.* v. *Krewson,* 129 Wash. 239, 224 P. 566, 53 A. L. R. 1416 (1924), the court at page 241 of 129 Wash. said, after quoting subdivision 4 of sec. 119 of the N. I. L.: "This section is but a statutory enactment of the law merchant and the common law. It does not undertake to define what constitutes a release of a simple contract, but leaves that to be decided by what was the rule under the law merchant and the common law." Under these circumstances the *Elliott* case can hardly be given much weight as supporting the contention of the plaintiff in the instant case.

The next case cited by the plaintiff is *Peter* v. *Finzer,* 116 Neb. 380, 217 N. W. 612 (1928). That was a typical mortgage assumption case, and the decision was that the mortgagor was not discharged from liability on the note. The decision was based squarely on the N. I. L., the reasoning being that because the section as to the discharge of persons secondarily liable provides for a discharge of such a person by a binding agreement by the holder, without the assent of such party and without expressly reserving a right of recourse against him, to extend the time of payment, and the section as to the discharge of the instrument itself contains no such provision, this latter section must be interpreted as excluding a discharge by a binding agreement made by the holder, without the assent of the mortgagor-maker, with one who has assumed the payment of the mortgage indebtedness, to extend the date for payment. The latter section was quoted, but the question whether its subdivision 4 would cover such a discharge was not even suggested. The court also relied to a considerable extent on *Union Trust Co.* v. *McGinty,* 212 Mass. 205, one of the leading accommodation maker cases above discussed. We have already discussed the two grounds upon which the decision in this case of *Peter* v. *Finzer* was based and found them not convincing.

The decision in the case next cited by the plaintiff, *Atlantic Life Ins. Co.* v. *Carter,* 165 Tenn. 628, 57 S. W. (2d) 449 (1933), was based almost entirely on the accommodation maker cases, although *Peter* v. *Finzer, supra,* and *Continental Mutual Savings Bank* v. *Elliott, supra,* were also cited. The court said that it was not contended that the defendant had been discharged in any of the ways set forth in sec. 119 of the N. I. L.; and that possibility was not considered. For these reasons the case, in our judgment, is not entitled to much weight as a precedent.

The next case cited is *Washer* v. *Tontar,* 128 Oh. St. 111, 190 N. E. 231 (1934). The opinion is a very brief one and the decision there was based partly on the maxim above mentioned and partly on the accommodation maker cases, but mainly on the ground that "There are not present facts essential to constitute a novation, there having been no acceptance of the assuming grantee as the principal debtor." Ohio is one of the minority states that have always refused to adopt the general common law rule of the discharge of a mortgagor-maker by an extension agreement made without his assent, between the holder of the mortgage note and a grantee of the mortgaged property who has agreed to pay the mortgage debt. The language above quoted from the opinion and other language therein clearly indicates that the decision depended largely on this state of the common law in Ohio; and the decision is, in our judgment, entitled to little, if any, weight as a precedent in the instant case.

On the other side are several cases which have reached the opposite result on reasoning which seems to us convincing. The earliest of these is *Isaacs* v. *Van Hoose,* 171 La. 676, 131 S. 845 (1930). The court there held that sec. 119 of the N. I. L. did not expressly exclude methods of discharge other than those specified but left others to be covered by sec. 196 of the act, which states that in any case not provided for in the act the law merchant shall govern. The court therefore applied the majority rule, which in that state governed in mortgage assumption cases before the act was passed there.

In the same year was decided the case of *Smith* v. *Black-ford,* 56 S. D. 360, 228 N. W. 466. There the defendants were two makers of notes secured by mortgages on real estate, and the holder, with the assent of only one of the makers, had made an agreement, extending the date for payment, with a grantee of the mortgaged property, who had assumed the payment of the notes. The court held that this extension agreement was a defense to the non-assenting maker in an action brought by the holder on the note. It based this decision on the suretyship rule applied by the majority of courts in mortgage assumption cases at common law and held, on reasoning that is convincing to us, that this defense was available under subdivision 4 of sec. 119 of the N. I. L.

The plaintiff's counsel contend that this decision is entitled to no weight, because the suretyship rule mentioned was in force in South Dakota by statute. But that statutory rule, incorporated, with the N. I. L. and an immense amount of other legislation, in a code, was merely the one that a surety is exonerated or discharged from liability by an extension of time granted by a creditor to his principal debtor without the consent of the surety; and we cannot see that the decision of the question whether a defense based on that general rule as applied in a mortgage assumption case is available under subdivision 4 of sec. 119 of the N. I. L. can at all depend upon whether the above *general* suretyship rule is statutory or by the common law.

The decision of that case was expressly approved as sound on principle in *Zastrow* v. *Knight,* 56 S. D. 554, 229 N. W. 925, 72 A. L. R. 379 (1930), where the basic issue involved was substantially the same. In *Stapler* v. *Anderson,* 177 Ga. 434, 170 S. E. 501 (1933), a similar defense was held to be available to a mortgagor-maker in a mortgage assumption case, as included in the same subdivision 4. The plaintiff's counsel in the instant case also contend that that case does not support the defendant's contention, because the Georgia civil code gave a general definition of suretyship. How that

fact distinguishes that case from the instant one we cannot see. To our minds it is a distinction without a difference.

*Jefferson County Bank* v. *Erickson,* 188 Minn. 354, 247 N. W. 245 (1933), is another decision squarely to the same effect and based on the same reasoning, that the defense is included in subdivision 4 of sec. 119 of the N. I. L. The court said that it could not follow the decision in *Peter* v. *Finzer, supra.* It cited *Howth* v. *J. I. Case Threshing Mach. Co.,* 280 S. W. 238, (Tex. Civ. App. 1926), and quoted, with approval, from the opinion in that case the following language with reference to sec. 119 (4) of the N. I. L.: "Under this latitudinous provision, the door is thrown wide open for the admission of the defense of discharge based on any act of the parties under any provision of a statute or any rule of law or equity."

The defendant's contention on this point is also supported by *Citizens Bank of Senath* v. *Douglass,* 178 Mo. App. 664, 161 S. W. 601 (1913). That was not a mortgage assumption case but the question presented is in our judgment substantially the same. There a third person, for a valuable consideration, assumed the payment of a note, and the holder thereof then made with him an extension agreement, without the assent of the maker. It was held that, apart from the N. I. L., this was a valid defense to the maker, when sued by the holder on the note, and that it was available under the N. I. L. The reasoning of the opinion, especially at page 688, is very convincing to us.

One of the most recent cases on the subject is *Prudential Insurance Co. of America* v. *Bass,* 357 Ill. 72, 191 N. E. 284 (1934), in which, on similar facts but on a little different line of reasoning, the same conclusion was reached as in *Jefferson County Bank* v. *Erickson, supra.* The Illinois negotiable instruments statute omitted, from its section corresponding with sec. 119 of the N. I. L., the subdivision 4 of the latter section; and the court held that as there was no specific provision dealing with the precise question presented in the case, it was governed by the previous law

merchant, under sec. 195 of the Illinois statute, viz., "In any case not provided for in this act, the rules of the law merchant shall govern."

That a note, governed by the N. I. L., may be discharged by operation of the law of suretyship is also shown by cases where the grantee of mortgaged property has expressly taken it subject to the mortgage but has not agreed to pay the mortgage indebtedness, and then the holder of the mortgage has, by agreement with the grantee, extended the maturity date without the consent of the maker, who proves, when sued by the holder on the note for a deficiency under a later foreclosure of the mortgage, that the market value of the mortgaged property at the original maturity date was at least equal to the sum then due on the note. *Zastrow* v. *Knight, supra; Mutual Benefit Life Ins. Co.* v. *Lindley,* 97 Ind. App. 575, 183 N. E. 127 (1932). The defendant in the instant case tries to distinguish the first of these cases and also *Prudential Insurance Co. of America* v. *Bass, supra,* on the ground that they were suits in equity for foreclosure of mortgage and not suits on promissory notes. But in each of these cases the holder of a note secured by a mortgage was seeking also to recover against the mortgagee; *on the note.* In the former case the court held that, on the facts shown, the obligations and rights of the parties were controlled by the principles of equity and not by the provisions of the N. I. L. Possibly this somewhat weakens the cases as authorities in the instant case; but defenses that rest on suretyship doctrines, though equitable in their origin, are usually now permitted in contract actions as legal defenses, and we do not understand that the plaintiff in the instant case has raised the point that the defendant could not rely on the defense in question because he had not set it up in an equitable plea.

The clear majority of the textwriters seem to agree with the rule contended for by the defendant in the instant case. For instance Williston at page 1060, § 364, of volume 2 of the revised edition of his work on Contracts, says: "A prom-

ise to assume and pay a mortgage for which the promisee is liable can hardly differ in principle from a promise to pay any other debt of the promisee, but the mortgage cases are frequently treated as a class by themselves."

At page 3416, § 1189 of volume 4 of the same work, in discussing sec. 119 of the N. I. L. with reference to sec. 122, which provides, among other things, for the discharge of an instrument by a renunciation in writing, the author says: "As in subsection (3), it has been argued that Section 122 of the Statute should limit subsection (4), but the great majority of the courts have allowed the introduction of parol evidence to show an accord and satisfaction, novation, or other discharge, at or after maturity. In other words, no limitation is made by the Act on what will discharge a negotiable instrument."

At page 1119, § 386 of volume 2, in discussing the case of a sale and conveyance of mortgaged property to a grantee who assumes the payment of the mortgage indebtedness, he says: "As between the grantor and grantee, the latter becomes principal debtor and the former a surety. Accordingly, if the mortgagee gives time to the grantee, he is generally held to forfeit all right to assert a claim against the grantor. Among the decisions to the contrary, some deny the release to the mortgagor where the debt is embodied in a negotiable note of which he is the maker, on the ground that extension of time to the grantee is not a mode of discharge specified in the Negotiable Instruments Law, but this view cannot be approved."

After a consideration of the authorities on both sides we agree with this conclusion and are confirmed in the opinion that, both on sound principle and by the great weight of authority, the defendant in the instant case had the right to introduce the line of evidence offered by him as above stated and that the trial justice erred in his ruling excluding it.

By reason of the rulings of the trial justice in excluding this line of evidence and of his ruling, upon which his direction of a verdict for the plaintiff was based, that because

of the law of this state governing negotiable instruments no such defense as this line of evidence was offered to establish was available to the defendant, it is our opinion that he also erred in directing the verdict for the plaintiff. In view of these conclusions we do not deem it necessary or advisable to discuss or rule upon the defendant's other exceptions.

The defendant's exceptions to the rulings of the trial justice in excluding evidence in support of the defendant's contention that his liability on the mortgage note was discharged by the action of the plaintiff in extending the maturity date of the note by valid agreement made by the plaintiff, without the defendant's consent, with a grantee who had assumed and agreed to pay the mortgage debt, are sustained. The defendant's exception to the direction by the trial justice of the verdict for the plaintiff is also sustained.

The case is remitted to the superior court for a new trial.

*Huddy & Moulton, Edward W. Lincoln, Bruce M. Docherty,* for plaintiff.

*Max Winograd, William J. Carlos,* for defendant.